## ADALBERT H. MCINTOSH, SR. *v.* JAMES F. SULLIVAN, COMMISSIONER OF TRANSPORTATION
### (SC 17094)

Norcott, Katz, Palmer, Zarella and Gilardi, Js.

Argued October 21, 2004—officially released July 5, 2005

*Lorinda S. Coon,* for the appellant (defendant).

*Bruce W. Diamond,* for the appellee (plaintiff).

*Opinion*

PALMER, J. The plaintiff, Adalbert H. McIntosh, Sr., brought this highway defect action under General Statutes § 13a-144[1] against the defendant, James F. Sullivan, the commissioner of transportation (commissioner), seeking damages for injuries that the plaintiff had sustained when the automobile that he was operating on a state highway in Waterbury was struck by falling rocks and debris. The commissioner filed a motion to dismiss the action on the ground that the complaint failed to state a claim under § 13a-144. The trial court denied the motion to dismiss, and the commissioner appealed to the Appellate Court, which affirmed the trial court's

---

[1] General Statutes § 13a-144 provides in relevant part: "Any person injured in person or property through the neglect or default of the state or any of its employees by means of any defective highway, bridge or sidewalk which it is the duty of the Commissioner of Transportation to keep in repair . . . may bring a civil action to recover damages sustained thereby against the commissioner in the Superior Court. . . ."

denial of the commissioner's motion to dismiss.[2] See *McIntosh* v. *Sullivan*, 77 Conn. App. 641, 645, 825 A.2d 207 (2003). We granted the commissioner's petition for certification to appeal limited to the following issue: "Did the Appellate Court properly conclude that the plaintiff's allegations did not fall outside the scope of . . . § 13a-144 as not involving a highway defect?" *McIntosh* v. *Sullivan*, 266 Conn. 926, 835 A.2d 475 (2003). We answer that question in the negative and, accordingly, reverse the judgment of the Appellate Court.

The following facts and procedural history are relevant to our analysis of the commissioner's claim. The plaintiff commenced this highway defect action against the commissioner alleging that, on March 1, 2000, the plaintiff was operating his automobile in the eastbound lane of a connector between exit 23 of Interstate 84 and Route 69 in Waterbury when his automobile "was struck by a large quantity of rocks, boulders, ice and dirt [that] had dislodged from an area adjacent to and above [the] highway," causing the plaintiff serious injuries. The plaintiff further alleged that his injuries were the result of the commissioner's failure to discharge his duties under the highway defect statute in one or more of the following ways: "(a) in that the highway was located dangerously close to raised rocky cliffs; (b) in that no attempt was made or inadequate attempts were made to stabilize the loose rocks; (c) in that the [commissioner] failed to erect barriers along the side of such roadway of sufficient height and strength to

---

[2] We note that, although interlocutory rulings generally are not immediately appealable, the denial of a motion to dismiss based on a colorable claim of sovereign immunity is an exception to this general rule. E.g., *Gordon* v. *H.N.S. Management Co.*, 272 Conn. 81, 91 n.12, 861 A.2d 1160 (2004). Because § 13a-144 "serves as a waiver of the state's sovereign immunity for claims arising out of certain highway defects"; *Filippi* v. *Sullivan*, 273 Conn. 1, 3 n.1, 866 A.2d 599 (2005); the commissioner was entitled to, and did, appeal from the trial court's adverse ruling on his motion to dismiss.

prevent falling rocks and debris from entering the highway and falling into the path of or onto vehicles making use of the highway; (d) in that there were no warning signs in the area to warn approaching motorists of the hazardous and dangerous conditions then and there existing; (e) in that the highway was not reasonably safe for purposes and uses intended; (f) in that the [commissioner] knew or in the exercise of reasonable care and inspection should have known of the conditions and remedied and corrected them; [and] (g) in that the conditions had existed for a sufficient period of time so that the [commissioner] knew or should have known of them and should have taken measures to remedy and correct them . . . ."

The commissioner filed a motion to dismiss the action on the ground that the allegations of the complaint were insufficient, as a matter of law, to state a claim under § 13a-144. The trial court denied the motion without comment, and the commissioner filed a motion to reargue, which the court also denied, noting only that "the commissioner's claim challenges liability, not the jurisdiction of the court."[3]

The commissioner appealed to the Appellate Court, claiming that the plaintiff's allegations fell outside the scope of § 13a-144. *McIntosh* v. *Sullivan*, supra, 77 Conn. App. 642. In rejecting the commissioner's claim, the Appellate Court relied on its analysis and conclusion in *Tyson* v. *Sullivan*, 77 Conn. App. 597, 824 A.2d 857, cert. denied, 265 Conn. 906, 831 A.2d 254 (2003), a

---

[3] As the Appellate Court stated, "the record does not contain a memorandum of decision or a signed transcript of an oral decision [by the trial court]. Nevertheless, because the essential facts are undisputed and the claim involves a question of law, the record is adequate for review. See *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.*, 254 Conn. 387, 395–96, 757 A.2d 1074 (2000) ([when] de novo review applies and facts are not disputed, precise legal analysis undertaken by trial court not essential to reviewing court's review of issue on appeal)." *McIntosh* v. *Sullivan*, supra, 77 Conn. App. 643 n.4.

case brought by a passenger in the automobile that the plaintiff in the present case was driving when that vehicle was struck by the falling rocks and debris. See *McIntosh* v. *Sullivan*, supra, 644. In *Tyson*, the Appellate Court affirmed the trial court's denial of the commissioner's motion to dismiss; see *Tyson* v. *Sullivan*, supra, 609; reasoning that "[i]t [was] of no consequence that . . . the rock ledge and its accumulation of debris were not on or within the highway prior to the accident. . . . A defect within the scope of the statute includes a condition located near the traveled path that, from its nature and position, would be likely to obstruct or to hinder one's use of the highway for traveling." (Citation omitted.) Id., 604. The court in *Tyson* also concluded, contrary to the contention of the commissioner, that that case was not controlled by *Comba* v. *Ridgefield*, 177 Conn. 268, 413 A.2d 859 (1979); see *Tyson* v. *Sullivan*, supra, 603; a case in which this court held that a branch that fell from a tree and struck a motor vehicle as that vehicle was traveling on the highway was not a highway defect for purposes of General Statutes § 13a-149, the municipal highway defect statute.[4] *Comba* v. *Ridgefield*, supra, 270–71. In light of its conclusion in the present case that the trial court "properly [had] determined that sovereign immunity did not deprive the court of subject matter jurisdiction";

[4] The plaintiffs in *Comba* brought their action pursuant to § 13a-144, the state highway defect statute, and § 13a-149, the municipal highway defect statute. See *Comba* v. *Ridgefield*, supra, 177 Conn. 269. "In interpreting [§ 13a-144] we have on many occasions looked to and applied the rationale in cases involving statutory actions against municipalities under . . . § 13a-149 since there is no material difference in the obligation imposed on the [commissioner] by § 13a-144 and that imposed on municipalities by § 13a-149." *Donnelly* v. *Ives*, 159 Conn. 163, 167, 268 A.2d 406 (1970); see also *Smith* v. *New Haven*, 258 Conn. 56, 64 n.6, 779 A.2d 104 (2001) (noting that case law interpreting §§ 13a-144 and 13a-149 can be applied interchangeably). Because "[t]here is no substantial difference in the duties imposed by those statutes"; *Comba* v. *Ridgefield*, supra, 269–70; we treat them as identical for purposes of this appeal.

*McIntosh* v. *Sullivan,* supra, 644; the Appellate Court found it unnecessary to address the commissioner's claim that "§ 13a-144 does not apply to the plaintiff's allegations that suggest defects in the highway's design." Id. Rather, the Appellate Court stated that, "[t]o the extent that [that] issue [was] not subsumed by [its] previous discussion in *Tyson,* the [commissioner could] raise the issue by way of an appropriate motion to the trial court." Id., 644–45.

On appeal to this court, the commissioner renews his contention that, regardless of how the plaintiff's claim is characterized, the allegations of the complaint fail as a matter of law because the falling rocks and debris did not constitute a highway defect for purposes of § 13a-144. We agree with the commissioner.

We begin our review of the commissioner's claim by setting forth the governing legal principles. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . Moreover, [t]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. . . . When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Citation omitted; internal quotation marks omitted.) *Filippi* v. *Sullivan,* 273 Conn. 1, 8, 866 A.2d 599 (2005).

"The state highway liability statute is a legislative exception to the common law doctrine of sovereign immunity and is to be strictly construed in favor of the state. While negligence was a common law tort, there was no liability of the sovereign at common law for a defective highway in negligence or on any other common law theory. . . . The state highway liability statute imposes the duty to keep the state highways in repair upon the highway commissioner; that is the statutory command. Therefore, because there was no right of action against the sovereign state at common law, a plaintiff, in order to recover, must bring himself within § 13a-144." (Citations omitted.) *White* v. *Burns*, 213 Conn. 307, 321, 567 A.2d 1195 (1990). Moreover, "[w]hether a highway is defective may involve issues of fact, but whether the facts alleged would, if true, amount to a highway defect according to the statute is a question of law . . . ." *Sanzone* v. *Board of Police Commissioners*, 219 Conn. 179, 201, 592 A.2d 912 (1991); accord *Ferreira* v. *Pringle*, 255 Conn. 330, 341–42, 766 A.2d 400 (2001). "To prove a breach of statutory duty under this state's defective highway statutes, the plaintiff must prove by a preponderance of the evidence: (1) that the highway was defective as claimed; (2) that the [commissioner] actually knew of the particular defect or that, in the exercise of [his] supervision of highways in the city, [he] should have known of that defect; (3) that the [commissioner], having actual or constructive knowledge of this defect, failed to remedy it having had a reasonable time, under all the circumstances, to do so; and (4) that the defect must have been the sole proximate cause of the injuries and damages claimed, which means that the plaintiff must prove freedom from contributory negligence." (Internal quotation marks omitted.) *Ormsby* v. *Frankel*, 255 Conn. 670, 675–76, 768 A.2d 441 (2001).

"We have held that a highway defect is [a]ny object in, upon, or near the traveled path, which would neces-

sarily obstruct or hinder one in the use of the road for the purpose of traveling thereon, or which, from its nature and position, would be likely to produce that result . . . . In *Hewison* [v. *New Haven*, 34 Conn. 136, 143 (1867)], we distinguished such highway defects from those objects which have no necessary [connection] with the road bed, or the public travel thereon, and which may expose a person to danger, not as a traveler, but independent of the highway . . . . We explored this distinction more recently in *Comba* v. *Ridgefield*, [supra, 177 Conn. 268]. In that case, [we] reject[ed] the . . . assertion that an overhanging tree limb, which subsequently fell on a traveling automobile, could be a highway defect, [explaining]: [I]f there is a defective condition that is not in the roadway, it must be so direct a menace to travel over the way and so susceptible to protection and remedial measures which could be reasonably applied within the way that the failure to employ such measures would be regarded as a lack of reasonable repair. Id., 271." (Citations omitted; internal quotation marks omitted.) *Sanzone* v. *Board of Police Commissioners*, supra, 219 Conn. 202. We consistently have held, moreover, that "[t]he state is not an insurer of the safety of travelers on the highways which it has a duty to repair. Thus, it is not bound to make the roads absolutely safe for travel. . . . Rather, the test is whether or not the state has exercised reasonable care to make and keep such roads in a reasonably safe condition for the reasonably prudent traveler." (Internal quotation marks omitted.) *Hall* v. *Burns*, 213 Conn. 446, 462–63, 569 A.2d 10 (1990).

Because the state is not an insurer of the safety of travelers on the highways, the "statutory obligation under § 13a-144 to keep the highway safe from defects is a reactive obligation, not an anticipatory obligation. That is, the [commissioner's] obligation under § 13a-144 is to remedy a highway defect once he: (1) has

actual notice of a specific defect; or (2) is deemed to have constructive notice of a specific defect. As we have noted previously, his obligation does not sound in general negligence. See, e.g., *White* v. *Burns*, [supra 213 Conn. 322–23]; *Lamb* v. *Burns*, 202 Conn. 158, 169, 520 A.2d 190 (1987); *McManus* v. *Jarvis*, 128 Conn. 707, 710, 22 A.2d 857 (1938); *Shirlock* v. *MacDonald*, 121 Conn. 611, 613, 186 A. 562 (1936); *Dunn* v. *MacDonald*, 110 Conn. 68, 77, 147 A. 26 (1929). Thus, the [commissioner's] statutory obligation is to act reasonably in remedying a defect of which he has actual or constructive notice. [In the absence of] such actual or constructive notice, his obligation does not extend to inspecting streets in order to prevent dangerous conditions, even when it is reasonably likely that such conditions may occur. See *Prato* v. *New Haven*, [246 Conn. 638, 646, 717 A.2d 1216 (1998)]." *Ormsby* v. *Frankel*, supra, 255 Conn. 676–77. Thus, "conditions that are likely to produce a defect and the defect itself are distinguishable, and . . . liability attaches under the highway defect statute only if [the commissioner] has notice of the defect itself." *Prato* v. *New Haven*, supra, 643. "Similarly, the predictability of a future defect is insufficient to prove that [the commissioner] had notice of a defect." Id.

Finally, with respect to the plaintiff's claim that the highway was defectively designed, it is well established that "a public authority acts in a quasi-judicial or legislative capacity in adopting a plan for the improvement or repair of its streets or highways and ordinarily will not be liable for consequential damages for injuries due to errors or defects in the plan adopted." *Donnelly* v. *Ives*, 159 Conn. 163, 168, 268 A.2d 406 (1970). Thus, as we stated in *Hoyt* v. *Danbury*, 69 Conn. 341, 37 A. 1051 (1897), "[a] defect in the plan upon which [a] highway [is] constructed . . . [does] not [come] within the [highway defect] statute. If such a defect naturally

results in a direct injury to an owner of adjacent land, he has his action at common law for this invasion of his proprietary right. . . . But injuries which it may occasion to travelers cannot be made the subject of any action in their favor. They are the result of an error of judgment on the part of the officers of a public corporation, on which has been cast the burden of discharging a governmental duty of a quasi-judicial character. For consequential damage thus occasioned to members of the general public, the common law never gave a remedy; nor has the statute changed the rule." (Citation omitted.) Id., 351–52.

Recognizing that an unduly rigid application of this rule could work an injustice in certain circumstances, however, the court in *Hoyt* also stated, in dictum, that, "[i]f . . . a defect in the plan of construction should be so great as soon to require repairs in order to make the highway safe for travel, a neglect to make these repairs might [support] an action; but the plaintiff's case would be no stronger than if the road had been originally built in the best manner. So, were the plan of construction adopted one which was totally inadmissible . . . the highway would have been in such a defective condition as to have been out of repair from the beginning." Id., 352; see also *Donnelly* v. *Ives*, supra, 159 Conn. 168 (recognizing "so-called *Hoyt* exception" to general rule of nonliability for error of judgment in plan of design when plan renders highway defective from beginning). Thus, notwithstanding the general rule that the state is not liable for damages sustained by a traveler due to a defect in a highway's design, the state nevertheless may be liable if such a defect gave rise to a hazard that otherwise would be actionable under § 13a-144.

The commissioner maintains that the reasoning and conclusion of the Appellate Court are inconsistent with the foregoing principles. In particular, the commissioner claims that the Appellate Court's holding violates

the bedrock tenet, first articulated in *Hewison* v. *New Haven,* supra, 34 Conn. 136, and consistently applied by our courts thereafter, that a condition or hazard is not a highway defect for purposes of the statute unless and until the condition or hazard is in the roadway or so close to it that it actually obstructs or impedes travel upon the roadway. See id., 142. The commissioner further claims that the Appellate Court's holding contravenes the well established rule, articulated most recently in *Ormsby* v. *Frankel,* supra, 255 Conn. 670, that "the [commissioner's] statutory obligation under § 13a-144 to keep the highway safe from defects is a reactive obligation, not an anticipatory obligation . . . [and] does not extend to inspecting streets in order to prevent dangerous conditions, even when it is reasonably likely that such conditions may occur." (Citations omitted.) Id., 676–77. Finally, the commissioner asserts that, to the extent that the plaintiff's complaint alleges a defect in the highway's plan of design, that claim also is not actionable under § 13a-144. We agree with all three of the commissioner's contentions.

In *Hewison,* a case long relied on by this court in addressing claims materially similar to the claim raised in the present case, a driver was injured when an iron weight that was attached to a banner suspended over the roadway and affixed between buildings on either side of the roadway fell and struck him in the head. *Hewison* v. *New Haven,* supra, 34 Conn. 137. In rejecting the claim of the plaintiff, Clara Hewison, under the highway defect statute, we stated: "[O]bjects which have no necessary [connection] with the road bed, or the public travel thereon, and which may expose a person to danger, not as a traveler, but independent of the highway, do not ordinarily render the road defective. For example, trees or walls of a building standing beside the road, and liable to fall by reason of age and decay, or from other cause; or any object suspended over the

highway so high as to be entirely out of the way of travelers; these, and like objects, may be more or less dangerous, but they do not obstruct travel. A person may be injured by them, but the use of the way, as such, does not necessarily conduce to the injury; he will be quite as likely to be injured while standing on the way, as while in motion; quite as likely to be injured while off the way as while on it. The tree or other object may or may not fall; it may or may not fall upon the highway; if it does, it may or may not fall upon a person traveling thereon; such a coincidence may possibly occur; but it is certainly not to be expected as a probable event. Such objects may be nuisances, which ought to be removed; but the [highway defect statute] has not imposed that duty upon [the commissioner]." Id., 143.

We also observed in *Hewison* that "there may be objects off the road bed, yet so near it, either on one side or over it, as seriously to impede the public travel. That it was intended to make it the duty of [the commissioner] to keep the highway clear of such obstructions, seems hardly to admit of a doubt.

"To define in general terms the precise limits of the duty of [the commissioner] in these cases is not an easy matter, as each case must depend very much upon its own peculiar circumstances. The following however may be an approximation to it. Any object in, upon, or near the traveled path, which would necessarily obstruct or hinder one in the use of the road for the purpose of traveling thereon, or which, from its nature and position, would be likely to produce that result, would generally constitute a defect in the highway. For example, branches of a tree hanging over the road bed near the ground, necessarily obstruct the use of the way, and should be removed by the [commissioner] . . . ." Id., 142; see also *Ferreira* v. *Pringle*, supra, 255 Conn. 342; *Sanzone* v. *Board of Police Commissioners*, supra, 219 Conn. 202; *Comba* v. *Ridgefield*, supra, 177

Conn. 270; *Riccio* v. *Plainville*, 106 Conn. 61, 63, 136 A. 872 (1927). Thus, *Hewison* and its progeny establish the principle that an object located above and out of the way of the road is not a defect cognizable under § 13a-144. This principle, coupled with the fact that the commissioner's responsibility under § 13a-144 is a reactive one, leads inexorably to the conclusion that the rocks and debris that fell onto the plaintiff's vehicle did not constitute a highway defect until they fell onto the road *and* the commissioner knew or reasonably should have known that they had fallen and actually were obstructing travel on the highway.

The Appellate Court in *Tyson* nevertheless relied on *Hewison* in support of its determination that the rocks and debris that struck the plaintiff's automobile while he was operating it constituted a highway defect. See *Tyson* v. *Sullivan,* supra, 77 Conn. App. 604–605. In reaching this conclusion, the court underscored the fact that the "ledge [from which the rocks and debris fell] was located directly alongside the highway, thus 'near the traveled path' "; id., 604; and the fact that "[l]oose rocks and other debris situated on a rock ledge are objects that, by their very 'nature and position,' likely could dislodge and roll onto the lane of a highway thus obstructing or hindering travel." Id. The Appellate Court's reliance on *Hewison* is misplaced.

This court recognized in *Hewison* that, although § 13a-144 generally covers only those defective conditions that are in or part of the roadway itself, there may be circumstances in which an object or hindrance that is not part of the roadway, but that, from its nature and position in, upon, or near the roadway, could constitute a highway defect *if that object or hindrance actually obstructs travel.* The example of such a defect that we gave in *Hewison* was "a tree hanging over the road bed near the ground, *necessarily obstruct[ing] the use of the way* . . . ." (Emphasis added.) *Hewison* v. *New*

*Haven*, supra, 34 Conn. 142. A low lying tree limb directly obstructing the right-of-way in a traveled path is fundamentally different from a rocky ledge suspended high above the traveled path, *entirely out of the traveler's way.*[5] Moreover, the example of the low lying tree limb must be viewed in the context of our broader holding in *Hewison*, namely, that objects suspended above the road are not defects within the meaning of the highway defect statute. Id., 143. Thus, contrary to the Appellate Court's analysis in *Tyson* and in the present case, the relevant inquiry under *Hewison* and its progeny is not whether the rocky ledge constitutes an object or condition near the traveled path. Clearly it does. The inquiry, rather, is whether the rocky ledge is an object or condition near the traveled path *"which would necessarily obstruct or hinder one in the use of the road for the purpose of traveling thereon . . . ."*

---

[5] We reiterated this same point more recently in *Comba* v. *Ridgefield*, supra, 177 Conn. 268: "This court in *Hewison* recognized that the defect need not be a part of the roadbed itself. It gave, among other examples, tree limbs overhanging the roadway near the ground which necessarily obstructed the use of the road. On the other hand, the case pointed out that those objects which have no necessary connection with the roadbed or public travel, which expose a person to danger, not as a traveler, but independent of the highway, do not ordinarily render the road defective. This court listed trees, walls of buildings standing beside the road, and objects suspended over the highway which are so high as to be entirely out of the way of travelers, as examples of the latter. It further pointed out that a person could be injured by them, but the use of the highway, as such, does not necessarily bring about the injury. Such objects may be a nuisance that the government unit may have an obligation to abate, but they are not defects in the highway." Id., 270; see also *Dyer* v. *Danbury*, 85 Conn. 128, 130–31, 81 A. 958 (1911) ("The overhanging limb did not constitute a defect in the highway. It did not obstruct travel thereon, and the city was not bound to remove it as a part of its duty 'to build and repair' the highways within its limits. . . . If the overhanging limb, by reason of its liability to fall upon the traveled part of the highway, constituted a nuisance, as alleged, it ought to have been removed. If it endangered travel upon the highway it was a public nuisance and the city could and should have caused its removal. But this duty of the city was a public governmental one, for the neglect of which no liability at common law ensued to the city, and no statute imposes any." [Citation omitted.]).

(Emphasis added.) Id., 142. Under that standard, the plaintiff's complaint must fail because the ledge, like the suspended iron weight in *Hewison*, did not, in and of itself, obstruct or hinder one's use of the highway.

Two other seminal highway defect cases, namely, *Comba* v. *Ridgefield*, supra, 177 Conn. 268, and *Dyer* v. *Danbury*, 85 Conn. 128, 81 A. 958 (1911), further illustrate this point. One of the plaintiffs in *Comba* was injured when a large tree limb extending over the traveled portion of the highway broke off and fell onto the vehicle in which she was riding. *Comba* v. *Ridgefield*, supra, 269. The trial court rendered judgment in favor of the defendants, the town of Ridgefield and the commissioner of transportation, on grounds of sovereign immunity; see id.; and we affirmed, stating: "The condition alleged . . . did not obstruct, hinder or operate as a menace to travel. It was a condition that could cause injury, but that injury could result even to one who was not a traveler on the highway. A person could be injured by the limb; but the use of the highway, as such, would not necessarily have led to the injury." Id., 271.

We reached the same conclusion in *Dyer*, in which the plaintiff was injured by a limb that had broken off a tree extending over the sidewalk on which he had been walking. *Dyer* v. *Danbury*, supra, 85 Conn. 130. Although the tree in that case "had existed in its dangerous condition for more than a year, and constituted a nuisance upon the highway"; id.; the overhanging tree limb "did not constitute a defect in the highway . . . [because] [i]t did not obstruct travel thereon . . . ." Id. Precisely the same reasoning applies to the rocks and debris that dislodged and struck the plaintiff's vehicle in the present case. Thus, as the commissioner aptly noted in his brief to this court, "[t]he necessary connection to the roadbed or travel means that, even though an object is not actually on the road's surface, it still

prevents a traveler from safely passing. *Hewison* men-
tions a tree at the side of the road with branches pro-
truding across the road low enough to interfere with
travel or an object that would frighten even gentle
horses. This reasoning has also been used to find that
broken traffic signals can render a road defective.[6] . . .

[6] As the commissioner notes, we held, in *Sanzone* v. *Board of Police
Commissioners*, supra, 219 Conn. 181, 203, that a malfunctioning traffic
light that simultaneously signaled green to traffic traveling north and traffic
traveling west, thereby causing an accident, constitutes a highway defect
for purposes of the municipal highway defect statute. We explained our
conclusion in *Sanzone* as follows: "We have held that a highway defect is
[a]ny object in, upon, or near the traveled path, which would necessarily
obstruct or hinder one in the use of the road for the purpose of traveling
thereon, or which, from its nature and position, would be likely to produce
that result . . . . *Hewison* v. *New Haven*, [supra, 34 Conn. 142]; see *Hickey*
v. *Newtown*, 150 Conn. 514, 518, 192 A.2d 199 (1963). In *Hewison*, we
distinguished such highway defects from those objects which have no neces-
sary [connection] with the road bed, or the public travel thereon, and which
may expose a person to danger, not as a traveler, but independent of the
highway . . . . *Hewison* v. *New Haven*, supra, 143. We explored this distinc-
tion more recently in *Comba* v. *Ridgefield*, [supra, 177 Conn. 268]. In that
case, rejecting the . . . assertion that an overhanging tree limb, which sub-
sequently fell on a traveling automobile, could be a highway defect, we
explained: [I]f there is a defective condition that is not in the roadway, it
must be so direct a menace to travel over the way and so susceptible to
protection and remedial measures which could be reasonably applied within
the way that the failure to employ such measures would be regarded as a
lack of reasonable repair. Id., 271.

"Unquestionably, a malfunctioning traffic light, although not a physical
impediment at street level, is, as a matter of law, such a highway defect,
or in the language of the statute, part of a defective road." (Internal quotation
marks omitted.) *Sanzone* v. *Board of Police Commissioners*, supra, 219
Conn. 202–203. In contrast to the reasoning and conclusion of the Appellate
Court in *Tyson* v. *Sullivan*, supra, 77 Conn. App. 597, the rationale and
conclusion of *Sanzone* are entirely consistent with our prior cases construing
the highway defect statutes. In particular, the hazardous condition in *San-
zone*, namely, the malfunctioning traffic light, actually existed in or so near
the highway when the plaintiff in *Sanzone* arrived at the intersection so as
to constitute a highway defect for purposes of the municipal highway defect
statute because it necessarily hindered and imperiled travelers in the use
of the road. See *Hewison* v. *New Haven*, supra, 34 Conn. 142. By contrast,
the hazardous condition in the present case, namely, the raised rocky ledge,
simply is not a highway defect for purposes of § 13a-144 because the ledge
did not actually obstruct or hinder highway traffic until the rocks and debris

It has never been used, however, to find that a suspended object, even if it would definitely fall into the road if it fell, had the necessary connection to the roadbed or to travel to render the highway defective." (Citation omitted.)

In *Tyson*, the Appellate Court sought to distinguish falling rocks and debris from falling tree branches on public policy grounds, asserting, essentially, that it would be easier for the commissioner to prevent the former than it would be to prevent the latter. See *Tyson v. Sullivan*, supra, 77 Conn. App. 605–606. Although we do not necessarily find this assertion to be self-evident, it simply is beside the point. Our cases make it perfectly clear that § 13a-144 does not create a cause of action predicated on negligence; e.g., *Prato v. New Haven*, supra, 246 Conn. 645 ("[o]ur cases clearly hold that a cause of action [under the highway defect statute] is not based upon negligence"); and does not require the commissioner to abate all nuisances even though they may pose a potential danger to highway travel. See, e.g., *Comba v. Ridgefield*, supra, 177 Conn. 270 (objects such as "trees, walls of buildings standing beside the road, and objects suspended over the highway which are so high as to be entirely out of the way . . . may be a nuisance that the government unit may have an obligation to abate, but . . . are not defects in the highway"). Moreover, because the commissioner's obligation under § 13a-144 is a reactive obligation rather than an anticipatory one, that obligation "does not extend to inspecting streets in order to prevent dangerous conditions, *even when it is reasonably likely that such conditions may occur.*" (Emphasis added.) *Ormsby v. Frankel*, supra, 255 Conn. 677. In other words, regardless of whether the commissioner reasonably should be required to inspect and to prevent certain conditions that pose a potential danger to highway travel, including

that were on it dislodged, fell into the road and, thereafter, obstructed it for some period of time.

rocks and debris lodged above a highway, the legislature has elected not to impose such a duty on the commissioner. As we recently have explained, the state is "not liable under § [13a-144] for failure to inspect and discover a potential defect, or a defect that might arise at some future time. . . . [U]nder the highway defect [statute], the [commissioner] must have notice of an actual defect and a reasonable period during which to remedy it. . . . [T]he reasonable duty to inspect and discover defects does not arise until there is an actual defect in the highway."[7] (Citations omitted.) *Prato* v. *New Haven*, supra, 646.

---

[7] We made a similar point in *Aaronson* v. *New Haven*, 94 Conn. 690, 110 A. 872 (1920). As we explained in *Prato* v. *New Haven*, supra, 246 Conn. 638: "In *Aaronson* . . . a silent policeman was placed in the roadway to regulate traffic. [*Aaronson* v. *New Haven*, supra], 692. The silent policeman had toppled over into the lanes of travel on numerous occasions. Id., 693. It was dislodged and rolled into the travel lanes at approximately 6:30 p.m. one evening, and someone had notified the police by 7 p.m. Id. It, nevertheless, still remained in the travel lanes at 7:30 p.m., when . . . [a] car [driven by the plaintiff, Abraham Aaronson] collided with it. The plaintiff sued the city of New Haven. We held that the city could be held liable because its officials had actual notice of the highway defect and ample time to remedy it. Id. This court was careful to point out, however, that its decision rested on the one-half hour lapse between the notice and the accident, and not on the fact that the silent policeman had toppled over in the past and had a propensity to topple over in the future. See generally id., 695–96. Despite the other occasions on which it had toppled over into the travel lanes, we indicated that the city did not receive actual or constructive notice of the defect until the police officer in charge was notified of the condition at 7 p.m. See id., 696 . . . ." (Citation omitted.) *Prato* v. *New Haven*, supra, 643–44. Indeed, we stated in *Aaronson* that the trial court "erred in charging that the mere placing of a silent policeman at the intersection of the streets with knowledge that it was liable to be displaced so as to become a dangerous obstruction to traffic, and without fastening or anchoring it so as to prevent or minimize such liability, was a breach of the legal duty which the [city of New Haven] owed to travelers on its streets." *Aaronson* v. *New Haven*, supra, 694. In *Aaronson*, we held that "[t]he jury should have been charged that the city was not liable unless it [had] failed to use reasonable care in discovering the obstruction after it existed, or [had] failed to use reasonable care in removing it after notice." Id., 696. Thus, even though it would have been reasonable to require the city of New Haven to take steps to prevent the silent policeman from toppling into the

Finally, we address the plaintiff's contention that "the facts alleged in the . . . complaint properly set forth a cause of action for a design defect pursuant to § 13a-144 . . . ." The plaintiff asserts that, although § 13a-144 does not, as a general rule, impose liability upon the state for defects in the design of a highway, "[t]he courts . . . have carved out a rather broad exception to the rule . . . ." We disagree with the plaintiff's contention that his complaint alleges a cognizable design defect claim.[8]

As we have explained, a defect in the design of a highway generally is not actionable under § 13a-144. E.g., *Donnelly* v. *Ives*, supra, 159 Conn. 168. In *Hoyt* v. *Danbury*, supra, 69 Conn. 352, we recognized a limited exception to that general rule. In *Hoyt*, the plaintiff, Henry W. Hoyt, brought an action against the city of Danbury after he slipped and fell on stairs that were built into the side of a hill that formed part of a municipal sidewalk. See id., 347. After a trial to the court, the court found that the stairs were defective because they were too steep and rendered judgment for the plaintiff. See id., 349–50. On appeal, we reversed the judgment of the trial court; see id., 354; explaining that "[a] defect in the plan upon which [a] highway [is] constructed . . . [does] not [come] within the [highway defect] stat-

roadway, to do so would have been contrary to the duty actually imposed on the city by the legislature under the highway defect statute.

[8] We also disagree with the plaintiff's characterization of the breadth of the exception to the general rule precluding liability for design defects. In support of that characterization, the plaintiff relies primarily on dictum in *Langton* v. *Westport*, 38 Conn. App. 14, 658 A.2d 602 (1995), in which the Appellate Court stated that the "exception to the general rule . . . has almost consumed the rule." Id., 18. Although it is true that we recognized the exception to the general rule more than 100 years ago; see *Hoyt* v. *Danbury*, supra, 69 Conn. 352, we have found the exception to be applicable only once. See *Perrotti* v. *Bennett*, 94 Conn. 533, 541–42, 109 A. 890 (1920). More importantly, as we explain more fully hereinafter, the exception is a relatively narrow one; to the extent that the dictum of the Appellate Court in *Langton* suggests otherwise, it is incorrect.

ute." Id., 351. The court also stated: "As to which, out of any appropriate modes of building the particular sidewalk in question, was to be chosen, it was for the [city] to decide; and so long as the mode selected was an appropriate and lawful one, its decision was not subject to collateral review in a suit of this nature. . . . The Superior Court had the right to determine whether [the stairs] were properly constructed and in good repair, but not to pronounce the walk defective because [they were] not built on an unbroken grade." Id. The court went on to state in dictum, however, that, "[i]f, indeed, a defect in the plan of construction should be so great as soon to require repairs in order to make the highway safe for travel, a neglect to make these repairs might [support] an action; but the plaintiff's case would be no stronger than if the road had been originally built in the best manner. So, were the plan of construction adopted one which was totally inadmissible . . . the highway would have been in such a defective condition as to have been out of repair from the beginning." Id., 352.

The hypothetical design claim that the court in *Hoyt* used to illustrate what an actionable design claim might resemble reveals the true nature and limitation of the "exception." Specifically, the court described a sidewalk that "had been left with its grade broken simply by a four foot wall, without the provision of steps . . . ." Id. According to the court, such a sidewalk "would have been in such a defective condition as to have been out of repair from the beginning." Id. Thus, the cognizable design defect claim that the court hypothesized in *Hoyt* essentially would consist of an allegation that the plan of design called for a four foot drop or hole in the road. Indeed, the court in *Hoyt* immediately went on to state that, under its hypothetical, the plaintiff's claim would be "no stronger than if the road had been originally built in the best manner";

id.; because, logically, the highway defect statute covers four foot holes in the middle of the roadbed irrespective of how they came to be there. In other words, a design defect claim can be distinguished from a traditional highway defect claim only insofar as the former includes an allegation that the dangerous condition inhered in the highway's plan of design, that is, the defect was not created by some other external condition, such as a particular occurrence, like a storm, or normal wear and tear. In all other respects, however, a design defect claim is indistinguishable from any other highway defect claim and, accordingly, it is subject to all the same statutory requirements, including the requirement that the alleged defect actually be in the roadbed or so near to it as to "necessarily obstruct or hinder one in the use of the road for the purpose of traveling thereon . . . ." *Hewison* v. *New Haven*, supra, 34 Conn. 142. In other words, *Hoyt* merely precludes the state from raising sovereign immunity as a defense when the plan of design, as implemented, creates the very type of hazardous condition for which the highway defect statute abrogated governmental immunity in the first place and for which the government otherwise would be liable had the dangerous condition originated through means other than the plan of design.

This was precisely the case in *Perrotti* v. *Bennett*, 94 Conn. 533, 109 A. 890 (1920), the only case in which this court ever has acknowledged that the "so-called *Hoyt* exception"; *Donnelly* v. *Ives*, supra, 159 Conn. 168; properly had been raised to defeat a defense of sovereign immunity. In *Perrotti*, the town of Hamden had installed a drain pipe twelve inches below the surface of a highway "in accordance with [a] plan adopted for the construction used in improving [the] highway." *Perrotti* v. *Bennett*, supra, 534. Pursuant to the plan of design, twelve inches of sand and gravel were placed between the drain pipe and the surface of the road. Id.,

534–35. Several years after construction of the drain pipe, the plaintiff, Domenico Perrotti, was injured when the roadway over the pipe suddenly collapsed under the weight of his truck. Id., 535. The trial court found that "[t]he drain [had not been] properly protected upon its upper surface from damage by heavy superimposed weight." Id. Nevertheless, the trial court concluded that "there was no negligence or default of [the defendant] the highway commissioner or any of his employees in failing to properly maintain said highway or to keep it in proper repair. . . . The damage to the plaintiff was not the result of neglect by the highway commissioner to properly maintain or repair said drain or said highway, but it was due to a defect in the original plan of construction of said drain, which did not provide for additional covering or protection of the tile where it came so close to the surface as the place in question, so that it could withstand the weight of the plaintiff's truck and its heavy load." (Internal quotation marks omitted.) Id., 535–36. The trial court therefore rendered judgment for the highway commissioner.

On appeal, we reversed the judgment of the trial court. Id., 542. We explained, first, that the plaintiff had the legal right "to operate a truck the combined weight of which, with that of the load, did not exceed 25,000 pounds"; id., 536; and that "proper construction and proper material in this case [required] a drain that would support [25,000 pounds]." (Internal quotation marks omitted.) Id., 536–37. We further stated that, although "[t]he principle of nonliability for error in the adoption of [a] plan for a municipal improvement is fully established . . . [w]henever the plan *in its execution* creates a nuisance, or causes direct injury to another, liability follows for the damage done. . . . The execution of the plan . . . [and] the operation of the improvement in accordance with the plan . . . are ministerial acts, and if the plan [is to] be executed or

the improvement [is to] be operated with negligence, the municipality will be liable for the resulting damage. . . . If the plan [is] defective from the beginning, or if its defect originate[s] shortly after the completion of the improvement, *and injury [is] ultimately necessarily the inevitable or probable result*, the municipality will be liable." (Citations omitted; emphasis added.) Id., 539. Applying these principles to the facts, we concluded in *Perrotti*: "The finding is that the drain was [not] properly protected, due to the covering of the roadway above it. The [trial court's] memorandum of decision attributes this defect in the highway either to the covering above the drain, or to the character of the pipe, or both. Obviously from the time the drain was laid it constituted a defect in the highway, whether this was due to the want of adequate covering, or to the character of the pipe, or both. *Hoyt* v. *Danbury*, [supra, 69 Conn. 352], expressly recognizes . . . this situation as creating an exception to the general rule of nonliability for error of judgment in a plan of municipal improvement . . . ." *Perrotti* v. *Bennett*, supra, 94 Conn. 541.

*Hoyt* and *Perrotti*, therefore, establish the unremarkable principle that a defect in a plan of construction of a highway may, upon execution of that plan, render the highway "out of repair from the beginning"; *Hoyt* v. *Danbury*, supra, 69 Conn. 352; such that, if a person were to be injured as a result of the disrepair, he or she would have a cause of action under the highway defect statute. Thus, the exception to the general rule barring liability under § 13a-144 for design defects is premised on the notion that certain design defects also may constitute highway defects within the meaning of § 13a-144. In other words, *Hoyt* stands for the limited proposition that, when a plaintiff pleads an otherwise actionable claim under § 13a-144—that is, a claim that otherwise comports with all of the statutory requirements—the state may not avoid liability merely by dem-

onstrating that the hazardous condition complained of inhered in the plan of design.

In the present case, we already have concluded that the plaintiff's allegations are insufficient to establish an actionable claim under § 13a-144 because the rocks and debris located above the highway did not impede or obstruct travel thereon. A fortiori, the plaintiff's allegations are insufficient to fall within the limited exception to the general rule precluding liability for design defects.

The dissent rejects our conclusion as "based [on] an unduly narrow construction of . . . our case law" and as "counterintuitive to the public policy underlying the state's waiver of immunity for defective highway claims."[9] On the contrary, it is the dissent that misperceives our case law and the public policy underlying the highway defect statute.

With respect to the dissent's first contention, our case law makes clear that objects that fall into the roadway are not defects within the meaning of the highway defect statute unless and until: (1) they actually have fallen into the roadway; (2) they actually obstruct traffic; *and* (3) the commissioner has reasonable notice of the obstruction. We have applied this principle to different kinds of potentially dangerous objects, including tree limbs; *Comba* v. *Ridgefield*, supra, 177 Conn. 271; *Dyer* v. *Danbury*, supra, 85 Conn. 130; objects suspended over a roadway; *Hewison* v. *New Haven*, supra, 34 Conn. 142–43; and traffic guideposts. *Aaron-*

---

[9] The dissent also contends that our conclusion is based on an unduly narrow construction of the highway defect statute itself. Neither our construction of the statute nor the dissent's construction of the statute, however, relies upon the language of the statute; both interpretations are predicated on this court's interpretive case law that dates back approximately 150 years. Consequently, the dissent's assertion that our construction of the highway defect statute is unduly narrow is subsumed by its identical assertion regarding our interpretation of the case law.

*son* v. *New Haven*, 94 Conn. 690, 695, 110 A. 872 (1920). The dissent has cited no case—because there is no such case—to support its assertion that the commissioner has a duty, first, to discover a potentially dangerous condition that exists off the roadway, and second, to take remedial measures to ensure that the condition does not become an actual obstruction to travel.

In an attempt to distinguish these cases from the present case, the dissent seizes upon certain language in our prior cases explaining that, with respect to objects that are located off the roadway, a person may be injured by those objects regardless of whether he or she is in the roadway. The dissent then asserts that we rejected the highway defect claims in those prior cases because the plaintiffs in those cases had failed to demonstrate that they would have been injured only while traveling upon the highway and not while off the highway. Finally, the dissent asserts that this case is distinguishable from those prior cases because it is "highly improbable . . . that the falling rocks and other debris could have injured anyone other than someone traveling on the highway." (Internal quotation marks omitted.) The dissent's logic and conclusion are fatally flawed.

First, the dissent's argument is built upon the proverbial straw man. Although this court has explained that conditions off the highway, such as rotting tree limbs, "could cause injury, but that injury could result even to one who [is] not a traveler on the highway"; *Comba* v. *Ridgefield*, supra, 177 Conn. 271; that observation was merely illustrative of the court's fundamental point, namely, that such objects are not defects within the meaning of the highway defect statute because they simply "[do] not obstruct, hinder or operate as a menace to travel." Id.; see also *Hewison* v. *New Haven*, supra, 34 Conn. 143 ("any object suspended over the highway so high as to be entirely out of the way of travelers

. . . may be more or less dangerous, but [it does] not obstruct travel"). Moreover, it would make no sense to construe the highway defect statute in the manner advanced by the dissent, that is, to render the viability of a cause of action under the statute dependent upon whether the condition that caused the plaintiff injury on the roadway was more or less likely also to have caused injury to a hypothetical person off the roadway. For example, under the analysis employed by the dissent, an overhanging tree limb *would* constitute a highway defect before it falls into the highway if, in view of the tree's particular location off the roadway, it is relatively *unlikely* that the falling limb would have injured a person other than a traveler on the highway; yet an identical overhanging tree limb would *not* constitute a highway defect before it falls into the highway if, in view of the positioning of the tree off the roadway, it is relatively *likely* that the falling limb also would have injured a person other than a traveler on the highway. There simply is no logical reason why the legislature would have intended that such a bizarre distinction be engrafted onto the statute, and the dissent has identified no such reason. Indeed, it is absurd to think that the commissioner's obligation under the statute—an obligation that "does not arise until there is an actual defect *in the highway*"; (emphasis added) *Prato* v. *New Haven*, supra, 246 Conn. 646; requires him to inspect the state's roadways and the areas adjacent to them for the purpose of attempting to draw the meaningless distinction advocated by the dissent in order to protect the state from liability.[10]

---

[10] Indeed, even if the distinction drawn by the dissent were a legitimate one, it would not avail the plaintiff in the present case. Although the dissent asserts that "it is 'highly improbable . . . that the falling rocks and other debris could have injured anyone other than someone traveling on the highway,'" that assertion—which the dissent fails entirely to explain—is wholly unfounded; there simply is no reason why a person working or climbing in the area between the rock ledge and the roadway also would not have been injured by the falling rocks.

The dissent further contends that our construction of the highway defect statute "is contrary to sound public policy." In support of this contention, the dissent asserts that "[t]here are critical differences between trees that grow alongside the roadway and rock ledges next to which a roadway is laid." Footnote 6 of the dissenting opinion. In particular, the dissent asserts that "trees are numerous and have an ever changing condition, [whereas] there are far fewer rock ledges and their condition is far less mutable, thus making it easier for the commissioner to monitor their condition and remediate any hazards." Id. Although there may be fewer rock ledges than trees in the state, many miles of highway are bordered by hills and cliffs. Moreover, rocks or ice or other debris situated on a hill or cliff above and off the roadway are likely to be less amenable to inspection than tree limbs hanging directly over the highway. Nevertheless, under the view advanced by the dissent, the commissioner—and presumably all municipalities, as well, because the municipal and state highway defect statutes are coextensive; see footnote 4 of this opinion—would be required to inspect those hills and cliffs for any potentially dangerous conditions. The dissent's unsupported assertion that the burden of performing such inspections would be less onerous than the burden of inspecting our state and municipal highways for overhanging tree limbs is dubious, to say the least.

More fundamentally, however, the dissent ignores the principle, firmly established in our law, that the highway defect statute does not give rise to a cause of action sounding in general negligence. E.g., *Ormsby* v. *Frankel*, supra, 255 Conn. 676. Although the rocks and debris that struck the plaintiff's automobile in the present case may have posed an unreasonable danger to travelers on the road, such that the commissioner's failure to remove them arguably was negligent, any

such negligence was manifestly insufficient to support a claim under the highway defect statute.[11] However strongly the dissent may feel that, "as a matter of public policy, the [commissioner] should have a duty to [alleviate that danger]"; (internal quotation marks omitted); that public policy is not embodied in the highway defect statute.[12] Rather, as this court's many highway defect cases indicate, the legislature has elected to waive sovereign immunity with respect to the repair and maintenance of the state's highways only when the defective condition is in or so near the roadway that it actually obstructs travel and the commissioner has reasonable notice thereof.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to remand the case to the trial court with direction to grant the commissioner's motion to dismiss and to render judgment for the commissioner.

---

[11] Indeed, as we have explained, the commissioner or municipality also may have been negligent in failing to secure or to remove the overhanging tree limbs in *Comba* v. *Ridgefield,* supra, 177 Conn. 269, and *Dyer* v. *Danbury,* supra, 85 Conn. 130, the suspended iron weight in *Hewison* v. *New Haven,* supra, 34 Conn. 136, and the traffic guidepost in *Aaronson* v. *New Haven,* supra, 94 Conn. 692. We nevertheless concluded in those cases that the commissioner or municipality was not liable under the applicable highway defect statute, despite any such negligence, because the alleged defect was not actually obstructing highway travel. See *Comba* v. *Ridgefield,* supra, 271; *Aaronson* v. *New Haven,* supra, 695–96; *Dyer* v. *Danbury,* supra, 130; *Hewison* v. *New Haven,* supra, 143. We hold the same today.

[12] We note, furthermore, that, although the dissent would hold the commissioner to a negligence standard in the present case—even though we consistently have rejected that standard in construing the highway defect statute—the dissent fails to articulate any principled rule or standard for deciding future highway defect cases that involve falling objects. Under the dissent's approach, some objects that are off the roadway, such as the falling rocks and debris in the present case, *are* highway defects before they actually fall into the road and obstruct travel thereon, whereas other objects, such as falling tree limbs, traffic guideposts and suspended iron weights, *are not* highway defects before they fall into the road and obstruct travel. Under the analysis employed by the dissent, it simply is impossible to ascertain whether a particular falling object is a defect within the meaning of the highway defect statute.

In this opinion NORCOTT, ZARELLA and GILARDI, Js., concurred.

KATZ, J., dissenting. The majority concludes that the doctrine of sovereign immunity bars the claim brought by the plaintiff, Adalbert H. McIntosh, Sr., against the defendant, James F. Sullivan, the commissioner of transportation (commissioner), under General Statutes § 13a-144,[1] the defective highway statute, alleging that, while operating his automobile on an interstate highway that was situated dangerously close to a rock ledge, he suffered serious physical injury when rocks fell from the ledge onto his car. I disagree with the majority's conclusion that the plaintiff cannot establish, under any circumstances, a cognizable highway defect claim under § 13a-144 because, in my view, that conclusion is based upon an unduly narrow construction of the statute and our case law, and is counterintuitive to the public policy underlying the state's waiver of immunity for defective highway claims. Therefore, I respectfully dissent.

The majority bases its decision on the following principles. First, the majority determines that a condition or hazard cannot be considered a highway defect,

---

[1] General Statutes § 13a-144 provides in relevant part: "Any person injured in person or property through the neglect or default of the state or any of its employees by means of any defective highway, bridge or sidewalk which it is the duty of the Commissioner of Transportation to keep in repair, or by reason of the lack of any railing or fence on the side of such bridge or part of such road which may be raised above the adjoining ground so as to be unsafe for travel or, in case of the death of any person by reason of any such neglect or default, the executor or administrator of such person, may bring a civil action to recover damages sustained thereby against the commissioner in the Superior Court. . . . The commissioner and the state shall not be liable in damages for injury to person or property when such injury occurred on any highway or part thereof abandoned by the state or on any portion of a highway not a state highway but connecting with or crossing a state highway, which portion is not within the traveled portion of such state highway. . . ."

"unless and until the condition or hazard is in the roadway or so close to it that it actually obstructs or impedes travel upon the roadway." Applying this principle to the plaintiff's claim, the majority, quoting *Hewison* v. *New Haven*, 34 Conn. 136, 142 (1867), concludes that falling rocks from a rock ledge situated directly next to the highway cannot be a highway defect because the rocks and rock ledge are not an object or condition that would "*necessarily* obstruct or hinder one in the use of the road for the purpose of traveling thereon . . . ." (Emphasis in original; internal quotation marks omitted.) Second, the majority reasons that, because we have determined that the commissioner's statutory obligation to remedy a highway defect does not arise until he has actual or constructive notice of the defect; see *Ormsby* v. *Frankel*, 255 Conn. 670, 676–77, 768 A.2d 441 (2001); the crumbling rock ledge would not trigger the commissioner's remedial duty unless rocks from the ledge actually were in the roadway and the commissioner knew of their presence *before* the plaintiff's automobile struck them. Finally, the majority concludes that certain cases in which we have rejected highway defect claims wherein objects have fallen from above the road are dispositive of the plaintiff's claim. I disagree with each of these conclusions.

I begin with certain well established principles. The defective highway statute expressly imposes liability on the state for injuries sustained "by means of any defective highway," through the state's fault or neglect, as a result of its failure to keep the highway in repair. General Statutes § 13a-144. We have recognized that "[t]he policy of § 13a-144 is to compensate those injured [by a highway defect] and to penalize the commissioner . . . for his neglect and default in carrying out his statutory duty to repair and maintain the state highways." *Hall* v. *Burns*, 213 Conn. 446, 460–61, 569 A.2d 10 (1990). Although the state has waived its sovereign immunity

in § 13a-144 for claims arising from such defects, the legislature has not defined or in any way limited what constitutes a highway "defect." Therefore, this court has defined and thereafter refined the meaning of that term on a case-by-case basis, mindful of the policy embodied in the statute. See *Chazen* v. *New Britain*, 148 Conn. 349, 353, 170 A.2d 891 (1961) ("[w]hether a condition in a highway constitutes a defect must be determined in each case on its own particular circumstances").

This court has defined a highway defect that gives rise to liability under § 13a-144 as " '[a]ny object in, upon, or near the traveled path, which would necessarily obstruct or hinder one in the use of the road for the purpose of traveling thereon, or which, from its nature and position, would be likely to produce that result.' *Hewison* v. *New Haven*, [supra, 34 Conn. 142]." *Comba* v. *Ridgefield*, 177 Conn. 268, 270, 413 A.2d 859 (1979). The court further has determined that a defective design may, under certain circumstances, constitute an actionable highway defect. *Hoyt* v. *Danbury*, 69 Conn. 341, 352, 37 A. 1051 (1897); see, e.g., *Federman* v. *Stamford*, 118 Conn. 427, 429–30, 172 A. 853 (1934) (affirming judgment in favor of plaintiff on design defect claim); *Perrotti* v. *Bennett*, 94 Conn. 533, 541, 109 A.2d 890 (1920) (reversing judgment in favor of defendant state highway commissioner on plaintiff's design defect claim); see also *Bovat* v. *Waterbury*, 258 Conn. 574, 585–86, 589, 783 A.2d 1001 (2001) (recognizing that either of plaintiff's alternative claims of highway defect for failure to repair or maintain or design defect legally could sustain verdict). Thus, although the commissioner is not liable for the state's choices regarding its plan of construction for a roadway, the defective implementation of that plan does fall within the ambit of the statute if "the plan of construction adopted [is] one which was totally inadmissible . . . [so] as to [ren-

der the highway] out of repair from the beginning." *Hoyt* v. *Danbury*, supra, 352. In other words, a design defect is a type of highway defect distinguishable simply by virtue of the fact that, with a design defect, the defect has existed from the inception of the roadway. Id. Thus, we have not construed the statute so literally as to preclude claims that common sense dictates would be encompassed within its terms.[2]

Consistent with the principle, however, that we narrowly construe statutes waiving sovereign immunity; *Prato* v. *New Haven*, 246 Conn. 638, 647, 717 A.2d 1216 (1998); this court has prescribed certain limits on defective highway claims. First, the state must have actual or constructive notice of the defective condition. *Ormsby* v. *Frankel*, supra, 255 Conn. 676–77. Second, the danger posed must be specific to travelers on the highways, not to those who similarly might be injured when engaged in acts other than highway travel. See *Hewison* v. *New Haven*, supra, 34 Conn. 143; see also *Hoyt* v. *Danbury*, supra, 69 Conn. 352 ("[f]or consequential damage thus occasioned to members of the general public, the common law never gave a remedy; nor has the statute changed the rule"). Thus, "objects which have no necessary connection with the roadbed or public travel, which expose a person to danger, not as a traveler, but independent of the highway, do not ordinarily render the road defective." *Comba* v. *Ridgefield*, supra, 177 Conn. 270. Finally, the state will not be liable when the object properly serves its function of facilitat-

---

[2] The plain meaning of the term "repair" would suggest a defective condition that arises subsequent to construction; yet, this court has recognized that liability could arise from a claim for a defect from the highway's inception. See, e.g., *Hoyt* v. *Danbury*, supra, 69 Conn. 352. Similarly, we have construed the statute to imply a cognizable action for the commissioner's failure to "maintain" a highway, although that term is not stated expressly in the statute. See, e.g., *Amore* v. *Frankel*, 228 Conn. 358, 367, 636 A.2d 786 (1994) (discussing commissioner's duty under statute "to repair or maintain").

ing travel and is reasonably safe. See *Donnelly* v. *Ives*, 159 Conn. 163, 167–68, 268 A.2d 406 (1970) (to prove that city had failed "to exercise reasonable care to make and keep [highways] in a reasonably safe condition for the reasonably prudent traveler . . . something more than a mere choice between conflicting opinions of experts" is required [citations omitted; internal quotation marks omitted]); *Aaronson* v. *New Haven*, 94 Conn. 690, 695, 110 A. 872 (1920) (rejecting defect claim for guidepost in road that was "sufficiently conspicuous . . . and . . . serve[d] a useful purpose in directing traffic and promoting obedience to the law").

In my view, all of these elements could be satisfied in the present case, thereby simply permitting the plaintiff to avoid a motion to dismiss and to have an opportunity to meet the burden of proving his allegations. The plaintiff alleges that a highway defect arose when the state constructed the highway dangerously close to the rock ledge, knowing that rocks and debris were likely to fall onto the highway, and made no effort to stabilize the rock ledge, to erect sufficient barriers so as to prevent rocks falling from the ledge into the highway or to post signs warning of the danger, and, as a result of these actions, the plaintiff was injured by such an occurrence when traveling on the highway. It is clear that, because the plaintiff's allegations are consistent with a claim of design defect, the notice requirement is satisfied as the commissioner is deemed to have constructive notice of a condition the state has created.[3]

---

[3] If the state builds a highway next to a rock ledge, it is almost certain that the architect of the highway must have been aware of the rock ledge and its proximity to the planned highway. Indeed, it is common knowledge that, in many instances, the state actually creates rock ledges by blasting hillsides during the course of constructing highways. In the present case, the deliberate positioning of the roadway near the rock ledges, such that loose rocks and other debris situated thereon—objects that, by their very nature and position, reasonably were at risk of dislodging and rolling onto the highway thereby obstructing or hindering travel—could fall, constitutes a defect that existed from the roadway's inception and thus gave rise to constructive notice.

See *Perrotti* v. *Bennett,* supra, 94 Conn. 539–40 (In discussing a municipality's liability for an injury from a municipal improvement on a highway, the court held: "If the plan be defective from the beginning . . . and injury be ultimately necessarily the inevitable or probable result, the municipality will be liable. . . . Upon this assumption the city created the defective improvement and either knew of it or was chargeable with knowledge of it."). The allegations also indicate that the rock ledge is "[an] object . . . *near* the traveled path . . . which, *from its nature and position, would be likely to* [obstruct or hinder one in the use of the road for the purpose of traveling thereon] . . . ." (Emphasis added.) *Hewison* v. *New Haven,* supra, 34 Conn. 142. The mere fact that the rock ledge abuts, but is not part of the road, is immaterial. "To construe the word 'defective' as applying to the road bed only, would partially defeat the purpose which the legislature had in view; for it is obvious that there may be objects off the road bed, yet so near it, either on one side or over it, as seriously to impede the public travel." Id. Finally, the plaintiff's allegations suggest that only those traveling on the interstate highway would have been susceptible to the danger. See *Comba* v. *Ridgefield,* supra, 177 Conn. 271. I agree with the Appellate Court, ruling in a companion highway defect case premised on the same incident at issue in the present case brought by a passenger in the plaintiff's vehicle, that it is "highly improbable . . . that the falling rocks and other debris could have injured anyone other than someone traveling on the highway." *Tyson* v. *Sullivan,* 77 Conn. App. 597, 605, 824 A.2d 857 (2003).

Undeniably, in maintaining our state highways, the commissioner has placed numerous signs and barriers along the roadside to warn of, and protect travelers from, the potential danger of rocks and debris falling

onto passing cars.[4] Moreover, it is common knowledge that on Interstate 84, where the plaintiff was injured, the public can access state highways only while in motor vehicles, not on foot or a bicycle. Therefore, such warning signs and barriers establish both that the danger is specific to highway travelers, and thus there is a necessary connection between the defect and the highway, and that the commissioner should be imputed with notice of such defects. To the extent that there is a question in the present case as to whether the connection to the roadbed is sufficient or whether the design is unreasonably dangerous, that is a question for the trier of fact. *Serrano* v. *Burns*, 248 Conn. 419, 426, 727 A.2d 1276 (1999). In sum, the allegations establish that, through the commissioner's fault, by virtue of the state's decision to construct the road in close proximity to a hazardous condition, there was a danger posed specifically to highway travelers of which the commissioner had notice and that he did not remediate.

The majority relies nonetheless on this court's holdings in *Hewison* v. *New Haven*, supra, 34 Conn. 142–43, *Dyer* v. *Danbury*, 85 Conn. 128, 130, 81 A. 958 (1911), and *Comba* v. *Ridgefield*, supra, 177 Conn. 270, for the proposition that hazards that fall onto the roadway from an object near or suspended above the roadway *never* can be a highway defect. I disagree that these cases compel the majority's conclusion.

A brief discussion of these cases is helpful. The plaintiff in *Hewison* alleged that some unknown persons

---

[4] The commissioner claims that, because the plaintiff specifically alleged that there were no warning signs present at the accident site; see *McIntosh* v. *Sullivan*, 77 Conn. App. 641, 642 n.3, 825 A.2d 207 (2003); the Appellate Court improperly considered the presence of warning signs and barriers along the highway in concluding that rockslides are a likely occurrence. See *Tyson* v. *Sullivan*, supra, 77 Conn. App. 604–605. This allegation has no bearing on the fact that it is common knowledge that such warning signs and barriers exist along Interstate 84, the site of the plaintiff's accident, and many other state roadways.

had suspended over the road a cloth banner, weighed down insecurely at its ends with iron weights, by affixing the ends of the cloth between buildings on either side of the road. *Hewison* v. *New Haven*, supra, 34 Conn. 136–37. The plaintiff's decedent was injured when a heavy wind knocked down the cloth, and the iron weight fell against his skull with such force that he later died. Id., 137. The court rejected as too broad the plaintiff's theory of liability that the defective highway statute imposed liability for any nuisance that would render the highway as "unsafe or inconvenient for public travel." Id., 141. The court cited numerous examples of nuisances that would be created by third persons that could injure or obstruct one traveling on the road that would not give rise to liability under the statute. Id., 140–41. The court also rejected, however, as too narrow the defendant's construction of the statute that "a road can only be rendered defective by something in or upon the road bed itself." Id., 141–42. Rather, the court determined that the appropriate balance, consistent with the statute's intent, was to impose liability when the objects bear a necessary connection to the road or public travel and create a danger exclusively to highway travelers, not to the public generally. Id., 142. Applying that standard, the court reasoned that "trees or walls of a building standing beside the road, and liable to fall by reason of age and decay . . . or any object suspended over the highway so high as to be entirely out of the way of travelers . . . may be more or less dangerous, but they do not obstruct travel." Id., 143. The court explained that such objects do not obstruct travel, in the sense of triggering liability under the statute, because a person was just as likely to be injured when off the road and not traveling on the road as when traveling on the road. Id. For that reason, the court concluded that the plaintiff could not prevail.

*Comba* v. *Ridgefield*, supra, 177 Conn. 268, and *Dyer* v. *Danbury*, supra, 85 Conn. 128, both involved injuries

sustained when a rotted limb from a tree situated next to the road fell, in the former, onto a passenger in a motor vehicle traveling on the road, and, in the latter, onto a person walking on the sidewalk. In discussing both cases, the court in *Comba* expressly noted that, although the claims had failed, "[t]he fact that the limb was not a part of the roadbed, or not within the traveled portion of the highway, was not controlling." *Comba* v. *Ridgefield*, supra, 271. Rather, those claims failed because the rotted tree "was a condition that could cause injury, but that injury could result even to one who was not a traveler on the highway." Id.

Thus, it is clear that, in the aforementioned cases, the court rejected the claims because the risk of injury was not limited to only those persons traveling on the highway. In the present case, however, for the reasons I already have discussed, the crumbling rock ledge posed a threat to highway travelers only. Indeed, I also surmise that, in light of its rejection of liability for nuisances created by persons other than the city, the court in *Hewison* reached its conclusion in part because the plaintiff did not allege that the dangerous condition was created in any way through the fault or neglect of the city. See *Hewison* v. *New Haven*, supra, 34 Conn. 136–37; see also *Aaronson* v. *New Haven*, supra, 94 Conn. 695–96 (rejecting highway defect claim wherein plaintiff was injured when his car struck otherwise conspicuous and properly functioning guidepost knocked into road by third party).

I agree with the majority that these cases *could* be read so as to bar the plaintiff's claim. I disagree, however, that these cases *compel* us to conclude, in the absence of such a limitation in § 13a-144, that a highway defect is limited to objects that actually are in the roadway and necessarily obstructing or impeding travel. As support for this proposition, the majority relies in large measure on an example of a potential highway defect

in *Hewison,* wherein the court states: "For example, branches of a tree hanging over the roadbed near the ground, necessarily obstruct the use of the way, and should be removed by the town . . . ." *Hewison* v. *New Haven,* supra, 34 Conn. 142. In my view, this dicta does not compel the conclusion that this example sets the ceiling on recovery under the statute. Indeed, it is not surprising that the *Hewison* court would cite an off road defect that obviously would fall within the ambit of the statute rather than ruminate as to a defect that was closer to the outer parameters of liability under the statute. I also note that, in one of the earliest highway defect cases, this court cited as an example of a design defect the failure to put a proper railing on steps between sidewalks of different grade. *Hoyt* v. *Danbury,* supra, 69 Conn. 352. Surely, not everyone would be impeded from traveling, but rather it would take the confluence of certain events for injury to occur—icy conditions, an elderly or disabled person needing additional support or people jostling each other. Similarly, in *Perrotti* v. *Bennett,* supra, 94 Conn. 539–40, this court recognized a design defect that had created a dangerous condition only by virtue of the confluence of two circumstances—a truck near the legal weight limit driving off the paved portion of the road and a drain located in that portion of the road that could not sustain such a great weight. See also *Bovat* v. *Waterbury,* supra, 258 Conn. 585–86 (affirming judgment in favor of plaintiff on design defect claim alleging that curve and grade of road produced dangerous condition when drivers approached from opposite directions at night with lights on, creating illusion that oncoming car was entering plaintiff's lane).

Thus, in my view, the majority reaches its conclusion based on an unduly narrow construction of the statute, one that our case law does not compel and one that is

contrary to sound public policy.[5] This court previously has established that, "if there is a defective condition that is not in the roadway, it must be so direct a menace to travel over the way and so susceptible to protection and remedial measures which could be reasonably applied within the way that the failure to employ such measures would be regarded as a lack of reasonable repair." *Comba* v. *Ridgefield,* supra, 177 Conn. 271. The common presence of warning signs and barriers along our state highways lends support to the conclusion that rock ledges are such a menace and establish the relative ease with which the danger posed by the rock ledges could have been alleviated. I also am mindful of the severity of physical injury that could be sustained from a large rock falling from high above onto a passing car. Because of the availability of reasonable remedial measures and the nature of the risk of harm, I would agree with the Appellate Court in that "as a matter of public policy, the state should have a duty to employ such measures."[6] *Tyson* v. *Sullivan,* supra, 77 Conn. App. 605.

---

[5] Indeed, although the commissioner's obligation does not sound in general negligence, such negligence principles are nonetheless relevant to the defective highway statute; see *Prato* v. *New Haven,* supra, 246 Conn. 645; and public policy concerns have influenced the limits of recovery under the statute. See *Hall* v. *Burns,* supra, 213 Conn. 460–61 (discussing policy underlying § 13a-144); *Prato* v. *New Haven,* supra, 646–47 (discussing policy underlying municipal defective highway statute, General Statutes § 13a-149); *Prato* v. *New Haven,* supra, 651 (*Berdon, J.,* dissenting) (asserting that "finding that constructive notice existed in this situation would advance the public policy underlying § 13a-149 of encouraging municipalities to use reasonable care in maintaining safe conditions on their highways").

[6] Thus, the present case presents different public policy concerns underlying the cases relied on by the majority, as discussed further in this dissenting opinion, in which this court has rejected highway defect claims for injuries sustained when tree branches fell onto pedestrians and automobiles. There are critical differences between trees that grow alongside the roadway and rock ledges next to which a roadway is laid. It is axiomatic that rock ledges do not grow spontaneously, nor are they planted, or placed there by a third party. Whereas trees are numerous and have an ever changing condition, there are far fewer rock ledges and their condition is far less mutable,

Additionally, the implications of the majority's conclusion that the plaintiff could not state a defective highway claim consistent with his allegations under any circumstances strongly suggest that sound public policy would counsel against such a construction of the statute. Under its approach, if a ten ton boulder were to fall onto the roadway from a rock ledge situated next to the roadway and injure a traveler on the roadway, the state would not be liable unless the boulder had been in the roadway for a sufficient period of time before causing an injury. If the state were to remove that boulder after it fell onto a victim, but did nothing to protect the road from future falling debris, the state still would not be liable for the next boulder that fell onto the road and injured a second victim, and so on. The majority's reasoning would protect the state from liability even if the state were to blast the rock ledge to make way for the road, and in doing so knowingly left a boulder precariously perched at the edge of the ledge. Similarly, the majority's decision would bar claims against the commissioner for falling bricks or stones from a tunnel or overpass through which the state constructs a road. Such a result defies reason when the state has waived liability for highway injuries sustained from dangerous conditions of which it has notice.

Finally, it is important to remember the procedural posture in which this case comes before us, specifically a motion to dismiss on grounds of sovereign immunity. In the present case, reading *the facts as alleged* in the light most favorable to the plaintiff; see *Miller* v. *Egan*, 265 Conn. 301, 305, 828 A.2d 549 (2003); the state is charged with being able both to foresee and to alleviate the harm. The plaintiff, therefore, should at least be given the opportunity to prove these elements at trial.

thus making it easier for the commissioner to monitor their condition and remediate any hazards.

See *Donnelly* v. *Ives*, supra, 159 Conn. 169 (rejecting design defect claim as legally insufficient "on the basis of the plaintiff's complaint *and on the evidence submitted in support of the allegations of the complaint*" [emphasis added]); see also *Pluhowsky* v. *New Haven*, 151 Conn. 337, 345–46, 197 A.2d 645 (1964) (affirming judgment in favor of defendant city on claim of design defect in light of expert testimony as to adequacy of design and evidence that dangerous condition not created by city); *Trotta* v. *Branford*, 26 Conn. App. 407, 413, 601 A.2d 1036 (1992) (affirming summary judgment rendered in defendant town's favor because plaintiff's complaint did not allege, as required, that defect was part of design and hence existed from inception of roadway); *Roy* v. *Michaud*, 5 Conn. App. 695, 700–701, 501 A.2d 1231 (1985) (directed verdict in favor of defendant commissioner of transportation upheld where plaintiff administrator failed to prove at trial that alleged highway defect was sole proximate cause of injury to decedent), cert. denied, 198 Conn. 806, 504 A.2d 1060 (1986). Therefore, I would conclude that the plaintiff's allegations state a colorable claim within the scope of § 13a-144.

Accordingly, I respectfully dissent.