DANIEL K. COX *v.* ELIZABETH AIKEN ET AL.
(SC 17399)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued February 6—officially released May 16, 2006

*Thomas P. Clifford III*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *William J. McCullough*, assistant attorney general, for the appellants (defendants).

*Opinion*

NORCOTT, J. In this appeal, we consider whether the doctrine of sovereign immunity precludes a state employee from bringing an action against the officials who allegedly laid him off from his employment in the classified service in violation of the seniority restrictions set forth in General Statutes § 5-241.[1] The defendants, the department of social services (department), and Elizabeth Aiken, the department's assistant director of human resources, appeal, following our grant of their petition for certification,[2] from the judgment of the Appellate Court affirming the trial court's denial of their motion to dismiss this action brought by the pro se

___

[1] General Statutes § 5-241 (a) provides: "No employee in the classified service who has been performing his duties in a satisfactory manner as shown by the records of the department, agency or institution in which he has been employed shall be dismissed or laid off from his position because of lack of work, economy, insufficient appropriation, change in departmental organization, abolition of position or any cause other than disability, delinquency, incompetency, misconduct or neglect of duty, if any other employee in the same classification performing comparable duties with less state service is to be retained in the same department, agency or institution. For the purposes of this section, the Employment Security Division may, at the discretion of the Labor Commissioner, be excluded from the remainder of the Labor Department and deemed to be a separate agency."

[2] We granted the defendants' petition for certification to appeal limited to the following issue: "Did the Appellate Court properly affirm the trial court's denial of the defendants' motion to dismiss?" *Cox* v. *Aiken*, 273 Conn. 916, 871 A.2d 370 (2005).

plaintiff, Daniel K. Cox.[3] See *Cox* v. *Aiken*, 86 Conn. App. 587, 596, 862 A.2d 319 (2004). We conclude that the plaintiff's claims that he was laid off in violation of § 5-241 are barred by the doctrine of sovereign immunity because the defendants acted in accordance with legislatively approved collective bargaining agreement provisions that superseded that statute. Accordingly, we reverse the judgment of the Appellate Court.

The Appellate Court opinion sets forth the following facts and procedural history. "The pro se plaintiff filed a complaint alleging that in January, 2003, he received a letter from Aiken, notifying him that he was to be laid off from his position as a social services investigator with the department. According to the plaintiff, the notice specified that he was being laid off pursuant to the terms of the union contract[4] that he had no 'bumping'[5] options and that there was no person in the same job class with less state time than he had who was to be retained. The plaintiff alleged that his layoff violated § 5-241 and that neither his layoff notice nor the union contract conformed to § 5-241. According to the plaintiff, the union contract provides that layoffs are to be based on seniority. The contract, however, exempts

[3] We note that the plaintiff failed to comply with our order stating that this appeal would be considered only on the defendants' brief and the record, unless he filed a brief by October 21, 2005. Thus, although he attended oral argument before this court, we declined to permit him to participate in any way. See Practice Book § 70-4 ("[n]o argument shall be allowed any party who has not filed a brief or who has not joined in the brief of another party").

[4] We note that the plaintiff is a member of the social and human services P-2 bargaining unit, and that the relevant collective bargaining agreement was effective July 1, 2002. The legislature has approved and ratified the collective bargaining agreement, including provisions that conflict with certain statutes and regulations, pursuant to the State Employee Relations Act, or Collective Bargaining for State Employees, General Statutes § 5-270 et seq. See also footnotes 15 through 18 of this opinion and the accompanying text.

[5] "According to the complaint, the union contract defines 'bumping' as the ability to displace someone with less state time in the same job class." *Cox* v. *Aiken*, supra, 86 Conn. App. 589 n.2.

union stewards from layoff, and the state statute contains no exemption for union stewards. The plaintiff alleged that he was laid off while a person with less time in the same position [holding a position as a union steward][6] was not laid off. The plaintiff maintained that according to § 5-241, in the event of a layoff, he had the right to the following options: (1) transfer to the same job class, (2) transfer to a comparable job class or (3) transfer to a position for which he was qualified in any department, agency or institution. The plaintiff sought, inter alia, reinstatement to his position as a social services investigator with full back pay, seniority and benefits.

"In response to the complaint, the defendants filed a motion to dismiss, in which they argued that the court lacked subject matter jurisdiction over the plaintiff's cause of action because (1) agents and officers of the state are immune from suit on the basis of sovereign immunity, and (2) the plaintiff failed to exhaust his available remedies at law.[7] The court denied the motion to dismiss, except as it pertained to the plaintiff's claim for retroactive compensation.[8] Specifically, the court

---

[6] As stated by the trial court, "[w]hile the plaintiff's complaint does not explicitly state that the person who was retained with less state service than the plaintiff was a union steward . . . [a] fair reading of the allegations contained in the complaint certainly implies that a union steward with less state service than the plaintiff retained his/her position, while the plaintiff was laid off." (Citation omitted; internal quotation marks omitted.)

[7] We note that the plaintiff filed a grievance with the office of labor relations (office), alleging numerous violations of the collective bargaining agreement in connection with his layoff. The office sustained his grievance in part with respect to portions of the plaintiff's military service, and the plaintiff, through his union, then claimed it for arbitration. For reasons not revealed by the record, however, the plaintiff withdrew his grievance subsequent to the filing of the state's motion to dismiss in this case.

[8] "The court held that the plaintiff's claim for retroactive compensation was a claim for money damages that could not be brought against the defendants without the permission of the claims commissioner. See *Miller* v. *Egan*, 265 Conn. 301, 321, 828 A.2d 549 (2003). Because the plaintiff had not alleged that he received permission to sue from the claims commissioner, the court dismissed the plaintiff's claim for retroactive compensation." *Cox* v. *Aiken*, supra, 86 Conn. App. 590 n.3.

held that the plaintiff's claim for injunctive relief, premised on an allegation that the defendants had acted in excess of their statutory authority pursuant to § 5-241, was not barred by the doctrine of sovereign immunity. The court therefore denied the defendants' motion to dismiss with respect to the plaintiff's claims for injunctive relief. With regard to the defendants' exhaustion argument, the court held that the plaintiff was excused from exhausting his administrative remedies under the contract because his claim arose under § 5-241, not the collective bargaining agreement. The court further held that because the plaintiff was claiming that § 5-241 provided him with greater protection than the collective bargaining agreement, he was not required to exhaust his remedies under the collective bargaining agreement. The defendants appealed, arguing that the court improperly denied their motion to dismiss on the basis of sovereign immunity, and the plaintiff's failure to exhaust his administrative and contractual remedies."[9] Id., 589–91.

On appeal, the Appellate Court concluded that the plaintiff's complaint overcame the defendants' sovereign immunity because it alleged statutory violations that, "if proven, would be sufficient to establish that the defendants acted in excess of the authority vested in them by § 5-241." Id., 594. For substantially the same reasons, the Appellate Court then rejected the defen-

[9] We note, as did the Appellate Court; *Cox* v. *Aiken*, supra, 86 Conn. App. 591 n.4; that the "denial of a motion to dismiss based on a colorable claim of sovereign immunity is an exception to [the] general rule" that "interlocutory rulings generally are not immediately appealable . . . ." *McIntosh* v. *Sullivan*, 274 Conn. 262, 264 n.2, 875 A.2d 459 (2005). We also note that, in March, 2004, the plaintiff was reinstated to his position with the department pursuant to his reemployment rights under the collective bargaining agreement. The state points out correctly that the reemployment of the plaintiff does not render this appeal moot because there is still practical relief that can be granted to him with respect to his claim for interim benefits, including seniority credit. See, e.g., *Segal* v. *Segal*, 264 Conn. 498, 505, 823 A.2d 1208 (2003).

dants' claim that the plaintiff was required to obtain the permission of the claims commissioner pursuant to General Statutes § 4-141 et seq., prior to bringing this action for injunctive relief.[10] Id., 594–95. Accordingly, the Appellate Court affirmed the judgment of the trial court, and this certified appeal followed.

On appeal to this court, the defendants raise a number of interrelated arguments involving the courts' subject matter jurisdiction over this case. With respect to sovereign immunity, the defendants claim that satisfying the injunctive relief exception to sovereign immunity, in which a state official acted "in excess of statutory authority," requires the plaintiff to do more than just allege the violation of a statute by a state official. The defendants also claim that the plaintiff lacks standing to enforce a statutory claim pursuant to § 5-241 because that particular statute has been superseded by the legislature's approval of conflicting provisions contained in the relevant collective bargaining agreement. Thus, they contend that, under the State Employee Relations Act, or Collective Bargaining for State Employees, General Statutes § 5-270 et seq., the courts lack jurisdiction to hear the plaintiff's claims because he failed to exhaust his exclusive remedy under that agreement, namely arbitration, with any waiver of sovereign immunity being limited to judicial review of the arbitration award. We do not find any one of these discrete arguments dispositive, but facets of each inform our resolution of this appeal.

We begin with the proper standard of review. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of

---

[10] The Appellate Court also declined, for lack of an appealable final judgment, to reach the defendants' claim that the plaintiff was required first to exhaust his remedies under the collective bargaining agreement before bringing suit. Cox v. Aiken, supra, 86 Conn. App. 595 n.8.

action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . Moreover, [t]he doctrine of sovereign immunity implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss. . . . When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Citation omitted; internal quotation marks omitted.) *Filippi* v. *Sullivan*, 273 Conn. 1, 8, 866 A.2d 599 (2005).

"[W]e have long recognized the validity of the common-law principle that the state cannot be sued without its consent . . . . We have also recognized that because the state can act only through its officers and agents, a suit against a state officer concerning a matter in which the officer represents the state is, in effect, against the state. . . . While the principle of sovereign immunity is deeply rooted in our common law, it has, nevertheless, been modified and adapted to the American concept of constitutional government where the source of governmental power and authority is not vested by divine right in a ruler but rests in the people themselves who have adopted constitutions creating governments with defined and limited powers and courts to interpret these basic laws. The source of the sovereign power of the state is now the constitution which created it, and it is now recognized that, as Mr. Justice Holmes wrote: A sovereign is exempt from suit, not because of any formal conception or obsolete theory, but on the logical and practical ground that there

can be no legal right as against the authority that makes the law on which the right depends. . . .

"We have held that a plaintiff seeking to circumvent the doctrine of sovereign immunity must show that: (1) the legislature, either expressly or by force of a necessary implication, statutorily waived the state's sovereign immunity[11] . . . or (2) in an action for declaratory or injunctive relief, the state officer or officers against whom such relief is sought acted in excess of statutory authority, or pursuant to an unconstitutional statute." (Citations omitted; internal quotation marks omitted.) *Miller* v. *Egan*, 265 Conn. 301, 313–14, 828 A.2d 549 (2003).

Our inquiry in this case is limited to the second exception to sovereign immunity, which does not apply "to claims against the state for monetary damages." Id., 315. Rather, "when a process of statutory interpretation establishes that the state officials acted beyond their authority, sovereign immunity does not bar an action seeking declaratory or injunctive relief."[12] Id., 327.

[11] "[A] plaintiff who seeks to bring an action for monetary damages against the state must first obtain authorization from the claims commissioner." *Miller* v. *Egan*, 265 Conn. 301, 317, 828 A.2d 549 (2003); see also General Statutes § 4-141 et seq. "When sovereign immunity has not been waived, the claims commissioner is authorized by statute to hear monetary claims against the state and determine whether the claimant has a cognizable claim. . . . This legislation expressly bars suits upon claims cognizable by the claims commissioner except as he may authorize, an indication of the legislative determination to preserve sovereign immunity as a defense to monetary claims against the state not sanctioned by the commissioner or other statutory provisions." (Citation omitted; internal quotation marks omitted.) *Miller* v. *Egan*, supra, 317–18.

[12] "We previously have explained the reasons underlying the exception to the doctrine of sovereign immunity for actions seeking declaratory or injunctive relief against a state officer for conduct in excess of statutory authority. Sovereign immunity rests on the principle and on the hazard that the subjection of the state and federal governments to private litigation might constitute a serious interference with the performance of their functions and with their control over their respective instrumentalities, funds and property. . . . Because a court may tailor declaratory and injunctive relief so as to minimize any such interference, and in order to afford an opportunity for

The Appellate Court reviewed the facts pleaded in the plaintiff's complaint and the plain language of § 5-241, stating that, "he alleged that he received a letter notifying him that he was to be laid off, that his layoff became effective as of January 29, 2003, and that his layoff violated § 5-241. Furthermore, the plaintiff alleged that he was informed that his layoff was pursuant to the terms of the union contract, that layoffs were based on seniority, that he had no bumping option and that, pursuant to the contract, union stewards were exempt from layoffs. He also alleged that § 5-241 does not exempt union stewards from layoffs. Although the plaintiff's complaint was not pleaded in an artful manner, we agree with the court that the allegations fairly imply that the plaintiff was laid off and that a union steward who had less state service than the plaintiff was not laid off. Although we note that these are simply allegations, which are subject to proof at trial . . . we conclude that those factual allegations, if proven, would be sufficient to establish that the defendants acted in

voluntary compliance with the judgment, actions that seek injunctive or declaratory relief against a state officer acting in excess of statutory authority or pursuant to an unconstitutional statute do not conflict with the policies underlying the doctrine of sovereign immunity." (Citations omitted; internal quotation marks omitted.) *Miller* v. *Egan*, supra, 265 Conn. 314.

Moreover, in *Miller*, the court "reexamine[d] the scope of the exception to the doctrine of sovereign immunity for actions in excess of statutory authority that we articulated in *Shay* [v. *Rossi*, 253 Conn. 134, 749 A.2d 1147 (2000)]." *Miller* v. *Egan*, supra, 265 Conn. 326. We rejected *Shay's* adoption of "a case-by-case standard somewhere between . . . two poles, namely, at one pole, the standard for abrogation of judicial immunity, and at the other pole, that a process of statutory interpretation yields a conclusion that the state officials acted beyond their authority." (Internal quotation marks omitted.) Id., quoting *Shay* v. *Rossi*, supra, 172. In *Miller*, we concluded that restriction of the exception for officials alleged to have acted in excess of their statutory authority to claims for declaratory or injunctive relief rendered it "sufficiently narrow" and eliminated the "danger that the exception will swallow the rule." *Miller* v. *Egan*, supra, 327. Thus, we concluded that, "when a process of statutory interpretation establishes that the state officials acted beyond their authority, sovereign immunity does not bar an action seeking declaratory or injunctive relief." Id.

excess of the authority vested in them by § 5-241. The court, therefore, properly denied the defendants' motion to dismiss on the basis of sovereign immunity." (Citation omitted; internal quotation marks omitted.) *Cox* v. *Aiken*, supra, 86 Conn. App. 593–94.

The Appellate Court's analysis assumes that the defendants' alleged violation of § 5-241, standing by itself, constituted an act "in excess" of their authority. This analysis is, however, incomplete in the context of this case, which involves a legislatively approved collective bargaining agreement that contains terms that have superseded various statutes, including § 5-241.[13] More specifically, the Appellate Court's analysis does not consider the effect of General Statutes § 5-278 (e),[14] which provides that, when there is a conflict between the terms of a collective bargaining agreement

---

[13] We note that our independent review of the record reveals that the defendants raised the issue of supersedence for the first time in their petition for certification to appeal to this court, and that they did not make these arguments either in their motion to dismiss or in their Appellate Court brief. The defendants' failure to preserve these claims in both the trial and Appellate Courts ordinarily would preclude us from reviewing them. Because they implicate our subject matter jurisdiction, however, we are required to do so, notwithstanding the defendants' earlier omissions. See, e.g., *Grimm* v. *Grimm*, 276 Conn. 377, 393 and n.18, 886 A.2d 391 (2005) ("a claim that has been abandoned during the initial appeal to the Appellate Court cannot subsequently be resurrected by the taking of a certified appeal to this court," although this rule "of course, does not apply to issues involving subject matter jurisdiction, which may be raised by the parties or the court, sua sponte, at any stage of the proceedings").

[14] General Statutes § 5-278 (e) provides: "Where there is a conflict between any agreement or arbitration award approved in accordance with the provisions of sections 5-270 to 5-280, inclusive, on matters appropriate to collective bargaining, as defined in said sections, and any general statute or special act, or regulations adopted by any state agency, the terms of such agreement or arbitration award shall prevail; provided if participation of any employees in a retirement system is effected by such agreement or arbitration award, the effective date of participation in said system, notwithstanding any contrary provision in such agreement or arbitration award, shall be the first day of the third month following the month in which a certified copy of such agreement or arbitration award is received by the Retirement Commission or such later date as may be specified in the agreement or arbitration award."

and a statute, the terms of the collective bargaining agreement control, so long as they were approved by the legislature in accordance with General Statutes § 5-278 (b).[15] See *Nagy* v. *Employees' Review Board,* 249 Conn. 693, 706–707, 735 A.2d 297 (1999); see also *State College American Assn. of University Professors* v. *State Board of Labor Relations,* 197 Conn. 91, 99, 495

[15] General Statutes § 5-278 (b) provides: "Any agreement reached by the negotiators shall be reduced to writing. The agreement, together with a request for funds necessary to fully implement such agreement *and for approval of any provisions of the agreement which are in conflict with any statute or any regulation of any state agency,* and any arbitration award, issued in accordance with section 5-276a, together with a statement setting forth the amount of funds necessary to implement such award, *shall be filed by the bargaining representative of the employer with the clerks of the House of Representatives and the Senate within ten days after the date on which such agreement is reached or such award is distributed.* The General Assembly may approve any such agreement as a whole by a majority vote of each house or may reject such agreement as a whole by a majority vote of either house. The General Assembly may reject any such award as a whole by a two-thirds vote of either house if it determines that there are insufficient funds for full implementation of the award. If rejected, the matter shall be returned to the parties for further bargaining. *Once approved by the General Assembly, any provision of an agreement or award need not be resubmitted by the parties to such agreement or award as part of a future contract approval process unless changes in the language of such provision are negotiated by such parties. Any supplemental understanding reached between such parties containing provisions which would supersede any provision of the general statutes or any regulation of any state agency or would require additional state funding shall be submitted to the General Assembly for approval in the same manner as agreements and awards.* If the General Assembly is in session, it shall vote to approve or reject such agreement or award within thirty days after the date of filing. If the General Assembly is not in session when such agreement or award is filed, it shall be submitted to the General Assembly within ten days of the first day of the next regular session or special session called for such purpose. The agreement or award shall be deemed approved if the General Assembly fails to vote to approve or reject such agreement or award within thirty days after such filing or submission. The thirty-day period shall not begin or expire unless the General Assembly is in regular session. For the purpose of this subsection, any agreement or award filed with the clerks within thirty days before the commencement of a regular session of the General Assembly shall be deemed to be filed on the first day of such session." (Emphasis added.)

A.2d 1069 (1985) ("[w]ith respect to a collective bar-
gaining agreement approved pursuant to § 5-278 (b),
unless a particular statute or regulation has been
referred to specifically in the documents submitted to
the legislature, its terms must necessarily prevail over
conflicting provisions of the agreement").[16]

Thus, "under [§ 5-278 (b) and (e)] a collective bar-
gaining agreement term may supersede inconsistent
statutes and regulations, provided that the appropriate
procedure has been followed. . . . [Section] 5-278 (b)
implicitly requires that, in order for the legislature to
'approve or reject' a collective bargaining agreement
term in conflict with law, the particular contract term
must be stated distinctly and correctly by the employer
in the transmittal of the contract to the legislature. If
the notification required by § 5-278 (b) did not apprise
the legislature of the conflicting . . . term, then that
term . . . would be ultra vires. Put another way, a term
at variance with law, not approved by the legislature
in accordance with . . . § 5-278 (b), does not enjoy the
preferential position provided for legislatively approved
conflicting terms by § 5-278 (e), but is rendered a nullity.
Neither party to the agreement is therefore entitled to
enforce that term." *Board of Trustees* v. *Federation of
Technical College Teachers*, 179 Conn. 184, 196–97, 425
A.2d 1247 (1979). Moreover, once the legislature has
approved a collective bargaining provision that con-

---

[16] "Section 5-278, by imposing the requirement for expressly informing
the legislators of conflicts between the agreement and existing statutes or
regulations, makes inapplicable the usual rule for ascertaining legislative
intent, that the legislature is presumed to be aware and to have knowledge
of all existing statutes and the effect which its own action or nonaction
may have on them. . . . With respect to a collective bargaining agreement
approved pursuant to § 5-278 (b), unless a particular statute or regulation has
been referred to specifically in the documents submitted to the legislature, its
terms must necessarily prevail over conflicting provisions of the agreement."
(Citation omitted; internal quotation marks omitted.) *State College American
Assn. of University Professors* v. *State Board of Labor Relations*, supra,
197 Conn. 99.

flicts with a statute or regulation, that approval remains effective with respect to future agreements between the state and a particular bargaining unit, and the conflicting provision need not be resubmitted for approval. See General Statutes § 5-278 (b) ("[o]nce approved by the General Assembly, any provision of an agreement or award need not be resubmitted by the parties to such agreement or award as part of a future contract approval process unless changes in the language of such provision are negotiated by such parties").

In the present case, the defendants cite and provide the relevant supersedence appendix (appendix), which the legislature approved in connection with the social and human services collective bargaining agreement for bargaining unit P-2, in effect from July 1, 1985, through June 30, 1988. That appendix specifically mentions, inter alia, the contract's provisions governing "layoff selection in inverse order of seniority by position, with seniority as defined [herein]," and "superseniority for union stewards in cases of layoff and transfer . . . ."[17] That appendix then cites numerous affected statutes and regulations, including General Statutes § 5-239, which governs state employee transfers, General Statutes § 5-241, and §§ 5-241-1 and 5-241-2 of the Regulations of Connecticut State Agencies, which govern reemployment lists and layoffs, respectively. Moreover, our independent research into available prior collective bargaining agreements between the plaintiff's union and the state verifies the defendants' claim that the superseniority provision has remained unchanged since that 1985 contract, and it is not mentioned in the supersedence appendices of subsequent agreements. Thus,

[17] Article VII, § 10, of the collective bargaining agreement provides in relevant part: "Superseniority for Stewards. (a) Layoff. Up to two hundred (200) employees who have served as stewards for at least ninety (90) days shall be viewed as having the highest seniority in their respective classification series within their employing agencies for purposes of layoff. . . ."

under § 5-278 (b), the legislature's approval in 1985 of the superseniority provision via the appendix has remained controlling with respect to future collective bargaining agreements, including the agreement in place at the time that the plaintiff was laid off.[18]

In the present case, the Appellate Court, on the basis of the limited information before it, determined that the defendants' layoff of the plaintiff while a union steward with less state service time was retained constituted an act in excess of the defendants' authority under § 5-241. See footnote 13 of this opinion. The Appellate Court did not, however, have the opportunity to consider the plaintiff's statutory claims in the necessary context of the relevant collective bargaining agreement, which provides for superseniority for union stewards, the conflicting provisions of which have been approved properly by the legislature. Thus, because the facts alleged by the plaintiff indicate that the defendants acted consistently with the legislatively approved superseniority provision of the relevant collective bargaining agreement, the defendants did not exceed their statutory authority and remain entitled to sovereign immunity.[19]

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to

[18] Accordingly, we disagree with the plaintiff's argument, made in his complaint, that § 5-241 is controlling because the supersedence appendix contained in his most recent union provided contract did not refer to § 5-241, and that previous appendices were invalid because they were more than twelve years old.

[19] Because we conclude that, even if the plaintiff's complaint asserts a claim for injunctive relief, the plaintiff has failed to meet his burden to show that a state official acted in excess of his or her authority, we need not reach the defendants' claim that, notwithstanding the solicitous treatment customarily afforded to pro se parties; see, e.g., *Oliphant* v. *Commissioner of Correction*, 274 Conn. 563, 569, 877 A.2d 761 (2005); the trial court and the Appellate Court improperly circumvented their sovereign immunity by construing the plaintiff's complaint, which had requested the relief of reinstatement to his position as a social services investigator with full seniority and benefits, to imply a claim for injunctive relief.

reverse the judgment of the trial court and to remand the case to that court with direction to render judgment dismissing the action for lack of subject matter jurisdiction.

In this opinion the other justices concurred.