******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

EVELEIGH, J., dissenting. I respectfully dissent. The majority concludes that the Appellate Court properly determined that the claim made by the plaintiff, Ellen Stotler, administratrix of the estate of the decedent, Paul A. Stotler III, related to an alleged defect in the plan pursuant to which the highway was constructed, rather than a claim that a defect in such plan or design resulted in an otherwise actionable hazard, namely, one that was in or near the roadway and which actually obstructed travel. Therefore, the majority affirms the judgment of the Appellate Court, which concluded that the trial court should have granted the motion to dismiss filed by the defendant, the Department of Transportation, because the plaintiff's complaint did not state a claim within the ambit of General Statutes § 13a-144 and, thus, was barred by the doctrine of sovereign immunity. I respectfully disagree. In my view, the allegations of the complaint, when read in a light most favorable to the plaintiff, establish that the allegations relate to a claim of design defect that is intrinsic to the road and is, therefore, actionable.

I

"Trial courts addressing motions to dismiss for lack of subject matter jurisdiction pursuant to [Practice Book] § 10-31 (a) (1) may encounter different situations, depending on the status of the record in the case. As summarized by a federal court discussing motions brought pursuant to the analogous federal rule, '[l]ack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.' *Ramming* v. *United States*, 281 F.3d 158, 161 (5th Cir. 2001). Different rules and procedures will apply, depending on the state of the record at the time the motion is filed.

"When a trial court decides a jurisdictional question raised by a pretrial motion to dismiss on the basis of the complaint alone, 'it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader.' . . . *Filippi* v. *Sullivan*, [273 Conn. 1, 8, 866 A.2d 599 (2005)]; see also *Shay* v. *Rossi*, 253 Conn. 134, 140, 749 A.2d 1147 (2000), overruled in part by *Miller* v. *Egan*, 265 Conn. 301, 325, 828 A.2d 549 (2003); see, e.g., *Federal Deposit Ins. Corp.* v. *Peabody, N.E., Inc.*, [239 Conn. 93, 99–100, 680 A.2d 1321 (1996)] (deciding jurisdictional question on pleadings alone).

"In contrast, if the complaint is supplemented by undisputed facts established by affidavits submitted in support of the motion to dismiss; Practice Book § 10-31 (a); other types of undisputed evidence; see, e.g., *Kozlowski* v. *Commissioner of Transportation*, [274 Conn. 497, 504 n.7, 876 A.2d 1148 (2005)] (photographs and deposition testimony); *Ferreira* v. *Pringle*, 255 Conn. 330, 336, 766 A.2d 400 (2001) (lease agreement); *Shay* v. *Rossi*, supra, 253 Conn. 139 n.7 (official records of department of children and families); and/or public records of which judicial notice may be taken; *Cox* v. *Aiken*, [278 Conn. 204, 217, 897 A.2d 71 (2006)] (state employees' collective bargaining agreement); the trial court, in determining the jurisdictional issue, may consider these supplementary undisputed facts 'and need not conclusively presume the validity of the allegations of the complaint.' *Shay* v. *Rossi*, supra, 140. Rather, those allegations are 'tempered by the light shed on them by the [supplementary undisputed facts].' Id., 141; see also *Barde* v. *Board of Trustees*, 207 Conn. 59, 62, 539 A.2d 1000 (1988). If affidavits and/or other evidence submitted in support of a defendant's motion to dismiss conclusively establish that jurisdiction is lacking, and the plaintiff fails to undermine this conclusion with counteraffidavits; see Practice Book § 10-31 (b); or other evidence, the trial court may dismiss the action without further proceedings. See, e.g., *Ferreira* v. *Pringle*, supra, 344–45; *Amore* v. *Frankel*, 228 Conn. 358, 364, 367–69, 636 A.2d 786 (1994). If, however, the defendant submits either no proof to rebut the plaintiff's jurisdictional allegations; *Connecticut Hospital Assn.* v. *Pogue*, 870 F. Sup. 444, 447 (D. Conn. 1994); or only evidence that fails to call those allegations into question; *Ostow & Jacobs, Inc.* v. *Morgan-Jones, Inc.*, 189 F. Sup. 697, 698 (S.D.N.Y. 1960); the plaintiff need not supply counteraffidavits or other evidence to support the complaint, but may rest on the jurisdictional allegations therein. See id.

"Finally, where a jurisdictional determination is dependent on the resolution of a critical factual dispute, it cannot be decided on a motion to dismiss in the absence of an evidentiary hearing to establish jurisdictional facts. *Gordon* v. *H.N.S. Management Co.*, 272 Conn. 81, 92, 861 A.2d 1160 (2004) ('[w]hen issues of fact are necessary to the determination of a court's jurisdiction . . . due process requires that a trial-like hearing be held, in which an opportunity is provided to present evidence and to cross-examine adverse witnesses' . . .); *Schaghticoke Tribal Nation* v. *Harrison*, 264 Conn. 829, 833, 826 A.2d 1102 (2003) (same). Likewise, if the question of jurisdiction is intertwined with the merits of the case, a court cannot resolve the jurisdictional question without a hearing to evaluate those merits. *Lampasona* v. *Jacobs*, 209 Conn. 724, 728, 553 A.2d 175 ('[i]n some cases . . . it is necessary to examine the facts of the case to determine whether it is within a general class that the court has power to hear'),

cert. denied, 492 U.S. 919, 109 S. Ct. 3244, 106 L. Ed. 2d 590 (1989). An evidentiary hearing is necessary because 'a court cannot make a critical factual [jurisdictional] finding based on memoranda and documents submitted by the parties.' *Coughlin* v. *Waterbury*, 61 Conn. App. 310, 315, 763 A.2d 1058 (2001)." (Emphasis omitted; footnotes omitted.) *Conboy* v. *State*, 292 Conn. 642, 650–54, 974 A.2d 669 (2009). Therefore, in view of the fact that this motion to dismiss was on the basis of the wording of the complaint, I view the allegations "in their most favorable light . . . including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *Filippi* v. *Sullivan*, supra, 273 Conn. 8.

The defective condition involved in the present case is alleged to be a dangerously steep road surface that channels descending traffic into a major crossing intersection immediately at the bottom of the slope, together with the absence of an escape ramp to divert and contain vehicles encountering runaway conditions, and the absence of adequate warning signs to alert drivers to the severity of the conditions they were about to encounter before they were irrevocably committed to the descent. In my view, these allegations are similar to those alleged in *Filippi*, in which this court concluded that the trial court properly denied the defendant's motion to dismiss. In *Filippi*, the allegations were that the road contained a blind curve and inadequate warning signs to alert drivers of a graded blind curve concealing traffic that had stopped. In my view, the majority's reliance upon *McIntosh* v. *Sullivan*, 274 Conn. 262, 875 A.2d 459 (2005), is misplaced. In *McIntosh*, the plaintiff claimed that the defendant, the Commissioner of Transportation (commissioner), was liable for injuries he suffered when "rocks, boulders, ice and dirt" became dislodged from a rock formation adjacent to the highway and struck his car. (Internal quotation marks omitted.) Id., 264. Specifically, the plaintiff in *McIntosh* claimed that the highway was defectively designed in that it was proximate to a rock face from which rocks might fall at some point in the future, and the commissioner had taken no steps to design the highway in a way that avoided or ameliorated that potential hazard. Id. 264–65. The commissioner claimed that the falling rocks did not qualify as an actionable highway defect pursuant to § 13a-144. Id., 267. This court agreed and held that potential hazards arising from objects out of the roadway are not actionable under § 13a-144. Id., 285.

Unlike *McIntosh*, the present case alleges existing hazards arising from the roadway's design, layout and surface condition, which makes the case clearly actionable. "To prove a breach of statutory duty under this state's defective highway statutes, the plaintiff must prove by a preponderance of the evidence: (1) that the highway was defective as claimed; (2) that the [commis-

sioner] actually knew of the particular defect or that, in the exercise of [his] supervision of highways in the city, [he] should have known of that defect; (3) that the [commissioner], having actual or constructive knowledge of this defect, failed to remedy it having had a reasonable time, under all the circumstances, to do so; and (4) that the defect must have been the sole proximate cause of the injuries and damages claimed, which means that the plaintiff must prove freedom from contributory negligence." (Internal quotation marks omitted.) Id., 268. A highway defect is "[a]ny object in, upon, or near the traveled path, which would necessarily obstruct or hinder one in the use of the road for the purpose of traveling thereon, or which, from its nature and position, would be likely to produce that result . . . ." (Internal quotation marks omitted.) Id., 268–69. "[I]f there is a defective condition that is not in the roadway, it must be so direct a menace to travel over the way and so susceptible to protection and remedial measures which could be reasonably applied within the way that the failure to employ such measures would be regarded as a lack of reasonable repair." (Internal quotation marks omitted.) Id., 269.

"[A] defect in the design of a highway generally is not actionable under § 13a-144. E.g., *Donnelly* v. *Ives*, [159 Conn.163, 168, 268 A.2d 406 (1970)]. In *Hoyt* v. *Danbury*, [69 Conn. 341, 352, 37 A. 1051 (1897)], [however] we recognized a limited exception to that general rule." *McIntosh* v. *Sullivan*, supra, 274 Conn. 280. This exception provides that, "notwithstanding the general rule that the state is not liable for damages sustained by a traveler due to a defect in a highway's design, the state nevertheless may be liable if such a defect gave rise to a hazard that otherwise would be actionable under § 13a-144." Id., 271. "[A] design defect can be distinguished from a traditional highway defect claim only insofar as the former includes an allegation that the dangerous condition inhered in the highway's plan of design, that is, the defect was not created by some other external condition, such as a particular occurrence, like a storm, or normal wear and tear." Id., 282. In other words, the highway, constructed according to a defective plan of design, is rendered "in such a defective condition as to have been out of repair from the beginning." (Internal quotation marks omitted.) Id., 281. "In all other respects, however, a design defect claim is indistinguishable from any other highway defect claim and, accordingly, it is subject to all the same statutory requirements, including the requirement that the alleged defect actually be in the roadbed or so near to it as to necessarily obstruct or hinder one in the use of the road for the purpose of traveling thereon . . . ." (Internal quotation marks omitted.) Id., 282. For example, in *Hoyt*, the plaintiff sued the city of Danbury on the theory that the city had defectively designed a sidewalk on "a street descending a hill" on which the plain-

tiff slipped and fell. *Hoyt* v. *Danbury*, supra, 347–48. This court ultimately rejected the plaintiff's claim that the design of the sidewalk was defective because it noted that "[a]s to which, out of any appropriate modes of building the particular sidewalk in question, was to be chosen, it was for the borough to decide; and so long as the mode selected was an appropriate and lawful one, its decision was not subject to collateral review . . . ." Id., 351. This court also opined, however, that the sidewalk's design would have been considered defective—and, therefore, "inadmissible"—if, for example, the steps had not been accompanied by a railing. Id., 352.

The doctrine first espoused in *Hoyt* was followed in *Perrotti* v. *Bennett*, 94 Conn. 533, 537–38, 109 A. 980 (1920), wherein the town of Hamden had installed a drainpipe twelve inches below the surface of a highway in accordance with a plan adopted for the purpose of construction. In accordance with the plan of design, twelve inches of gravel and sand were packed between the surface of the road and the drainpipe. The plaintiff was injured, several years after the drainpipe's construction beneath the road, when the roadway over the pipe collapsed under the weight of the plaintiff's truck. Id. In *Perrotti*, this court held the plaintiff's design defect claim to be actionable under the defective highway statute and reversed the judgment of the trial court dismissing the plaintiff's claim, reasoning that, "[w]henever the plan [of design] in its execution creates a nuisance, or causes direct injury to another, liability follows for the damage done. . . . If the plan [is] defective from the beginning, or if its defect originate[s] shortly after the completion of the improvement, and injury [is] ultimately necessarily the inevitable or probable result, the municipality will be liable. Clearly this is just." (Citations omitted.) Id., 539–40. This court continued: "The finding is that the drain was no[t] properly protected, due to the covering of the roadway above it. . . . Obviously from the time the drain was laid it constituted a defect in the highway, whether this was due to the want of adequate covering, or to the character of the pipe, or both. *Hoyt* v. *Danbury*, [supra, 69 Conn. 352], *expressly recognizes . . . this situation as creating an exception to the general rule of nonliability . . . .*" (Emphasis added.) *Perrotti* v. *Bennett*, supra, 541.

Read in the light most favorable to the plaintiff, the allegations contained in the complaint clearly place the claims within the purview of § 13a-144, as interpreted and applied in *Hoyt* and its progeny. The plan of design in *Perrotti*, pursuant to which the drainpipe that ultimately collapsed under the weight of passing trucks was built into the roadway, only twelve inches under its surface, made the roadway intrinsically defective from the outset as built. Similarly, the plan of design in the present case provided for the road, which has always been open to truck traffic, to be built on a steep

downhill grade. This plan of design is alleged—and may be proved—by the plaintiff to have been defective from the outset because its incorporation into the roadway created a condition intrinsic to the roadway. This defect, the plaintiff further alleges, constituted a nuisance such that, when the roadway was used as intended by trucks, "injury [was] ultimately necessarily the inevitable or probable result . . . ." Id., 539.

Furthermore, I respectfully disagree with the majority's overly narrow interpretation of what may constitute a design defect. The majority concludes that, because the downhill grade is not "an actionable hazard in the road that necessarily obstructed travel," the design of the highway in this case cannot be claimed to be an actionable defect. Although I agree with the majority that, ultimately, this doctrine's roots are planted in *Hoyt*, it is my opinion that *Hoyt* stands for the proposition that a road may be defectively designed when it is inherently unsafe. Indeed, the defect complained of in the present case is not so different from the situation that this court intimated would qualify as a design defect in *Hoyt*. It is, ultimately, a decision for the state, and not this court, to decide whether the best place for a road open to trucks is along the downslope of a mountain. Cf. *Hoyt* v. *Danbury*, supra, 69 Conn. 351. But having made that design decision, the state is required to implement it safely. A road with an extremely steep downhill grade that is traversed by large trucks, without warning signs and with no truck runoff is defective in the same way that a staircase with no railing is defective. To recognize that people will occasionally slip while descending stairs is to recognize reality. It is similarly uncontroversial to recognize that if people slip on a set of stairs which does not possess a railing, they will be without means through which they can stabilize themselves, and as a result they will be injured when they fall. Along those same lines, when trucks descend a mountain road with a steep declining grade, occasionally their brakes will fail.[1] In the absence of a truck runoff, an accident is all but certain to occur as a result. Both of these aforementioned risks are inherent to the respective chosen designs. The court in *Hoyt* intimated that these types of inherent risks—when not accounted for by safety features—may give rise to a design defect claim. Indeed, would the majority decision still be the same if the design of this highway was on an inherently dangerous 30 percent slope?

I also find the case of *Rusch* v. *Cox*, 130 Conn. 26, 31 A.2d 457 (1943), instructive. In that case, the plaintiff, the administrator of the decedent's intestate estate, claimed that the death of the decedent had been caused by a defective highway. Id., 28. In *Rusch*, the plaintiff's decedent had been killed when the car in which he was traveling as a passenger slammed into a wooden fence that lined the side of the highway. Id., 29–30. At the point where the vehicle containing the decedent struck

the fence, the fence suddenly and drastically narrowed the width of the shoulder of the highway from over eight feet to four feet in width. Id. The trial court concluded that the design of the fence created a dangerous and defective condition in the highway. Id., 30. On appeal, this court determined that "[w]e may not hold that the conclusion of the trial court that the staggering of the fences under the circumstances constituted a defective road was unreasonable, as a matter of law." Id., 30–31. Thus, just as a highway with a defectively designed guardrail might be considered to be defective, so too might a road with an extreme downhill grade and no accompanying safety measures. In both instances, the injury arose simply from the way in which the road was designed, not from some other condition or obstacle on the road itself.

As a result, this case presents an entirely different question than did the rocky ledge high above the roadway in *McIntosh*. That claimed defect, by contrast, was not built into the roadway by design and, thus, was not an intrinsic defect to the road itself. On the other hand, the 10 percent downhill grade built into the relevant section of Route 44 has been claimed by the plaintiff to be an intrinsic defect in the design of the road. This 10 percent downhill grade may be shown to present an unacceptable risk of brake failure in trucks that travel over this section of road. Thus, similar to the plan in *Perrotti* that called for the drainpipe to be built only twelve inches under the road, the plan of design providing for the steep downhill grade in Route 44 could be considered defective because the execution of that plan created a nuisance from which "injury [was] ultimately necessarily the inevitable or probable result . . . ." *Perrotti* v. *Bennett*, supra, 94 Conn. 541.

Further, in *Bovat* v. *Waterbury*, 258 Conn. 574, 579, 783 A.2d 1001 (2001), this court affirmed a jury award for the plaintiff where the allegations were as follows: "(1) the defendant maintained the road without proper lighting; (2) the road was not reasonably safe for the uses or purposes intended; (3) the defendant maintained the road in a state of disrepair, causing it to be dangerous and hazardous; (4) the layout, grade or design of the road was improper; (5) the road was designed with an extremely sharp curve with a utility pole placed at the apex of the curve at the edge of the roadway, thereby creating a dangerous and hazardous condition; (6) the defendant failed to remedy the stated conditions when it was aware or should have been aware of them in the performance of routine inspections; and (7) the defendant failed to warn travelers of the dangerous and hazardous conditions." We also held that the city could be held liable for both a design defect and a defect in repair and maintenance. Id., 585. I fail to see any major distinction between *Bovat* and the present case. Certainly, the allegations in *Bovat*, which stated that the road was designed with an extremely

sharp curve with a utility pole placed at the apex of the curve at the edge of the roadway, are virtually identical to the allegations in the present case which indicate that the road was designed with a very steep slope for trucks with an intersection located at the bottom of the hill. Further, the absence of warning signs, which is an allegation contained in this case, was also present in *Bovat.* Id. Therefore, I would conclude that the allegations are sufficient, when read in a light most favorable to the plaintiff, to defeat the motion to dismiss the complaint. Therefore, I respectfully dissent from the majority opinion.

## II

In view of my position in part I of this dissent, unlike the majority and the Appellate Court, I also consider the defendant's claim that the highway's design was not, as a matter of law, the sole proximate cause of the accident and, therefore, the trial court improperly denied its motion for summary judgment.[2] See footnote 5 of the majority opinion. I conclude that there is a genuine issue of material fact primarily established by the affidavit of one of the plaintiff's experts, Douglas Rowland. Rowland concluded that "the condition of the truck, including its brake components, was not a substantial factor in causing the accident." Further, he concluded that "the only substantial factor in causing the accident was a dangerously defective condition of Route 44, including inadequate signage, the lack of a [b]rake [c]heck [a]rea at the top of the mountain, and the lack of an [e]mergency [e]scape [r]amp at the bottom of the mountain. Had these defects not existed, the accident would not have occurred." In my view, this affidavit was sufficient to defeat summary judgment, and the opinions therein, if found by a fact finder, would be sufficient to establish sole proximate cause.

Accordingly, I would conclude that the Appellate Court improperly reversed the judgment of the trial court denying the defendant's motion to dismiss this action for lack of subject matter jurisdiction, and that a genuine issue of material fact regarding the issue of sole proximate cause existed. Therefore, I respectfully dissent.

[1] At least one expert in the present case determined that in this case, the condition of the truck "was not a substantial factor in causing the accident." In other words, at least one expert would have concluded that this accident came about solely due to the design of the road.

[2] I note that "[t]he denial of a motion for summary judgment ordinarily is an interlocutory ruling and, accordingly, not a final judgment for purposes of appeal." *Brown & Brown, Inc.* v. *Blumenthal*, 288 Conn. 646, 653, 954 A.2d 816 (2008). Nonetheless, in light of my conclusion that the Appellate Court should have affirmed the trial court's denial of the defendant's motion to dismiss, I would address this issue "in the interest of judicial economy, on the assumption that it will arise on remand." *Mueller* v. *Tepler*, 312 Conn. 631, 646 n.14,    A.3d    (2014).